6 WS　51
32 SC　618

## Moore *against* Pearson.

The testimony of a deceased witness, which has been taken on the trial of another action between the same parties or those under whom they claim, about the same subject matter, may, if proved by the notes taken of it at the trial, be given in evidence to establish the facts then testified to.

Upon an objection to evidence, the Court will not stop to hear the testimony of the objecting party as a ground to sustain their objection.

In an action of ejectment, it is competent for the plaintiff to give evidence of the declarations of one who was a joint claimant of the land in dispute with the ancestor or alienor of the defendant respecting the boundary of it, that being a point material to the issue.　And upon such evidence being given, it is not competent for the defendant to prove the declarations of the same person made at a subsequent period, and after suit brought, having a different tendency.

ERROR to the District Court of *Mercer* county.

John Pearson against James Moore, Hugh Moore, and Aaron W. Mumford.　Ejectment for 200 acres of land.　The plaintiff offered in evidence the deposition of Judge Banks to prove the testimony of Allen Dunn, Esq. deceased, a witness in an ejectment wherein Hugh Moore and Samuel Evans were plaintiffs, and John Pearson defendant, and the *scire facias* and affidavit substituting Hugh Moore and James Moore as heirs of Hugh Moore deceased, and Aaron W. Mumford as purchaser from Samuel Evans, as defendants in this suit.　This was objected to on the ground that it was not in this suit or between these parties, and that he did not prove enough to enable him to give evidence—not proving that he recollected the testimony independent of his notes.

Thompson, President.—It appears that the testimony was taken in a suit where the parties were reversed, with this difference—it is the heirs and assignees of the original plaintiffs that are now defendants.　It is the same subject-matter now as then; and we overrule both objections, and at the defendants' request seal an exception.

[Moore v. Pearson.]

After the Court had decided on the above exception, the defendants offered in evidence a deed from John Sheakly and wife to the defendants, to show that the defendants did not hold under Hugh Moore and Evans; and further objected on this ground to the deposition being read.

By the Court.—No title has been shown in John Sheakly, nor is it competent, after showing by the record what has been shown in this case, to stop the plaintiff in this way. Objection overruled, and exception.

The plaintiff having called Samuel Evans, offered to ask him what James Herrington said in presence of Hugh Moore and Samuel Evans, on an examination of the lines, and while Herrington was claiming an equal share in what was supposed to be vacant, as contained in what the plaintiff claimed to be 1028, 1029, 1030, and which Herrington, Moore and Evans claimed together as vacant land. This was objected to, the objection overruled, and exception taken.

The defendants proposed to prove what Herrington said at another time, and after a suit had been brought for the land, on the subject of the disputed boundary. The plaintiff objected, and the Court overruled the evidence.

The other matters in the cause, which were voluminous, and involved no general principle, are not stated further than they are contained in the opinion of the Court.

*Foster* and *Stevenson*, for plaintiffs in error. The deposition of Judge Banks was improperly admitted. 5 *Whart.* 162; 4 *Serg. & Rawle* 203; 4 *Binn.* 111; 1 *Dall.* 2.

If Herrington's declarations were evidence at all, they were evidence for us, and Townsend should have been admitted. But the cases show that the declarations of a deceased person are confined to boundary, and are not extended so as to admit evidence of title. Proving a donation corner proves the title. 5 *Rawle* 348. In support of the objections to Martin's detail of Herrington's conversations, see 2 *Yeates* 477; 6 *Binn.* 62; 2 *Serg. & Rawle* 70; 7 *Watts* 42.

The 5th error assigned is supported by *Smith* v. *Moore* (5 *Rawle* 348), and the same principle applies to the 7th and 8th errors. That case decides explicitly that the identity of each tract depends upon its numbered corner, and upon this fact we wished to go to the jury. If there were two 1029's in the district, the general draft must be called in to decide, as evidence of the intent of the surveyor; and the Court erred in telling the jury that if they found one 1029 original, the other was fabricated. This was a fact for the jury alone.

We were entitled to a clear and distinct reply to our 2d point; or " The plaintiff must satisfy you of the truth of his case" being

always correct, will be an answer to any and every point propounded by counsel.

The fact left to the jury in the answer to the plaintiffs' 2d point was one unsupported by a tittle of evidence, no one witness having sworn to having ever counted the maple. 8 *Watts* 385; 6 *Watts* 487.

The plaintiff made his declarations evidence by first giving them to the jury. 2 *Stark. R.* 314; 4 *Rawle* 400; *Greenleaf's Ev.* 493; *Floyd* v. *Bovard* (*post*, 75).

*Pearson*, for defendant in error, as to the admission of the evidence, cited 10 *Serg. & Rawle* 14; 17 *Serg. & Rawle* 409; 6 *Watts* 487; 6 *Binn.* 59; 2 *Serg. & Rawle* 70; *Stark. Ev.* 24; 11 *East* 589; 17 *Johns.* 335; 18 *Johns.* 330; 16 *Serg. & Rawle* 193; 6 *Whart.* 175.

The opinion of the Court was delivered by

KENNEDY, J.—The first error is an exception to the decision of the court, admitting the deposition of Judge Banks. The plaintiffs in error were the defendants in the court below; but in a former ejectment brought for the same land and tried, their ancestors and assignors, from whom they derived their claim to it, were plaintiffs, and the present defendant in error, who was plaintiff below in this case, was the defendant. On that trial he adduced Allen Dunn, who testified as a witness on his behalf and has since died. Judge Banks was counsel then for Pearson, the defendant in error, and took notes of the evidence given by Dunn. The deposition of Judge Banks was offered to prove what Dunn testified to on behalf of Pearson. The deposition was objected to, because it was not taken in the present action, or in any other between the same parties for the same subject-matter; and likewise because Judge Banks was not able to testify that he had any recollection of what Dunn testified to, but believed that the notes taken by him of the testimony of Dunn, contained substantially all he did testify to, though perhaps not in the very words used by Allen throughout, but in words of the same import. The court, however, admitted the deposition to be read in evidence, and we think rightly, too; for it is very evident, if the testimony of a deceased witness, given by him in his lifetime on a former trial of the same matter between the same parties, is only to be supplied by some one who recollects every word of his testimony, it will seldom if ever be practicable to do so. Indeed, such is the frailty of human memory, that the correctness of the statement of one who undertakes, after a lapse of some considerable time, to give the very words which the witness used in giving his testimony, may well be doubted. All experience, in this respect, fully proves that it is more safe to rely on the notes taken at the time of what the witness said, by one who, upon his oath or affirmation, states

that he believes they contain substantially all the witness testified to.

But before reading the deposition in evidence, after the court had decided that it was admissible, the defendants, for the purpose of preventing its being read, offered to read in evidence a deed of conveyance from John Sheakly and wife for the land in dispute to the defendants, which the court very properly overruled. This deed was offered to show that the defendants did not claim under the plaintiffs in that suit as their heirs or assignees, but from Sheakly, who did not, from anything that was offered to be shown, appear to have the least colour or shadow of claim. But even supposing that Sheakly had had a claim, it would have been highly improper in the court to have received the deed in evidence then, for the purpose of preventing the plaintiff from giving the testimony of Dunn in evidence, after he had given evidence showing that the parties to this action were, in contemplation of law, the same as those in which Dunn had testified. For the court to have received the evidence offered by the defendants, would not have availed them, unless the court had also gone further, and decided that they did not claim the land in dispute as the heirs or assignees of those who were the plaintiffs in the former action. But this would have been deciding a question of fact, which, in case of conflicting testimony, belonged to the jury to settle, and not to the court. If the defendants, therefore, could have shown that they did not claim as the heirs and assignees of the plaintiffs in the former action, but under Sheakly, who had a distinct and different title or claim, they ought to have waited until the plaintiff had closed his evidence, and then have offered and given theirs, so that the question of fact should have been left by the court to the jury to settle, under a direction from the court to the jury, if they believed the defendants claimed under Sheakly exclusively, that they ought to throw the testimony of Dunn out of their view altogether.

The third error is also an exception to the opinion of the court, receiving the declarations of James Herrington in evidence, made by him in the presence of Hugh Moore, the ancestor of two of the defendants below, and Samuel Evans, the grantor of the other defendant, when examining the lines, and while Herrington was claiming an equal share in what was supposed then to be vacant land, and, as plaintiff alleges and will show, embraces the tracts Nos 1028, 1029 and 1030, all which were claimed by Herrington, Moore and Evans jointly, as vacant land. The declarations were, that before the Bowman trial, which took place in 1807, Herrington, in a conversation with Samuel Evans the elder, Samuel Evans the younger, Hugh Moore and one Stewart, said, " We have 1028 on the district line, 1029 on the bank of French Creek, and 1031 south of Deer Creek, and we are safe.' Now, as Herrington claimed the land in dispute, at the time of making his declarations,

[Moore v. Pearson.]

in conjunction with Moore and Evans, from whom the plaintiff below had given evidence showing that the defendants there had obtained their claim and possession of the same, it can scarcely be doubted that they were evidence for the plaintiff below, so far as they make in his favour. Being made, too, in the presence of Moore and Evans, from whom it was shown that the defendants below derived their claim, they may, as would seem to have been the case, have been assented to all round, or at least not contradicted, and therefore be regarded as the declarations of Moore and Evans; and if so, it is impossible to question their admissibility as evidence against the defendants. The declarations of Herrington, testified to by John Martin, seem also to come under the same view, and, therefore, were properly admitted by the court.

The fourth error is an exception to the opinion of the court, rejecting an offer by the defendants below to prove by Abel Townsend, that after the commencement of this action, and during its pendency, James Herrington told him he had seen the tree with a 1029 on it one day, and when he saw it the next day it had a different number; and that Townsend accused him of having altered it, and he did not deny it. This was offered, as it was alleged, to discredit the previous declarations of Herrington given in evidence by the plaintiff. If Herrington had been living, and had given evidence on the trial as a witness for the plaintiff, doubtless the defendants would have been entitled to give evidence of his declarations, made at any time, tending to contradict what he had testified to. But then he was not ~~sued~~ by the plaintiff as a *used.* witness; nor can his declarations, which the plaintiff gave evidence of, be viewed in that light, for the purpose of doing away the effect of his declarations given in evidence by the plaintiff. A party interested having made declarations which may be given in evidence against him, or those claiming a community of interest with him, cannot be allowed to avail himself of his subsequent declarations contradicting the first, or having a contrary tendency, by giving the latter in evidence, especially when made, as in this case, *post litem motam;* for it is perfectly plain, if he were allowed to do so, the rule which permits his first declarations to be given in evidence would be wholly futile and useless. Neither would the rule avail anything, which allows his first declarations to be given in evidence against those claiming a community of interest, or their privies, if his subsequent declarations of a contrary tendency were allowed to be given in evidence, with a view to repel the effect of the first; because it is easy to perceive that such subsequent declarations could generally be obtained by the latter persons to be made, and would seldom if ever be wanting for their benefit. We therefore think the court decided correctly in rejecting the offer.

The fifth error is an exception to that portion of the charge of the court to the jury, in which it states that they may supply a

missing number by reference to the tracts north and south of it. What the court said on this subject is in these words: "It often happens now that the numbered corners are gone; how will you establish the fact that it stood at a particular point? I would say it may be done in this way. The surveyor-general, in making these surveys, gave instructions to his deputies to number all the lots in a particular class, so that they should follow each other in numerical order. Now, if the original number in the centre of a range is absent, and the numbered corner north as well as south be found on the ground, and original lines leading to the alleged place of the absent corner, a jury would in all probability be satisfied with this as fixing the location of the absent number." It is difficult, if not wholly impossible, to discover any well-founded objection to what the court said on this point. As it was made the duty of the deputy-surveyors to designate the corners by numbers in numerical order, the presumption is that they did so, until the contrary shall be made to appear; hence I take it that it would be the bounden duty of the jury, in the absence of testimony tending to prove the contrary, to find that the intermediate tract, without number, had the intermediate number originally affixed to it, which corresponded with the intermediate number between the two numbers on the adjacent north and south tracts respectively. There is clearly, therefore, no error in what the court said on this point.

The sixth error is an exception to what the court said to the jury in relation to the two trees, each of which was alleged to have been marked 1029, where only one of them could have been properly so marked originally. In regard to this the court said, "The presumption, in the first place, is, there are not two numbers 1029. It will require very clear proof as to both to establish them both as original; if either is doubtful, the proving that one is original would in all probability prove the other is not original." We can perceive no error in this suggestion of the court to the jury, which was not made with a view to have any binding instruction. It in effect was no more than, if they should find one of them to be clearly an original, the probability would be that the other was not, unless they had evidence also sufficient to show that it was an original number 1029. In this we think there is nothing exceptionable.

The seventh error is an exception to the instruction given by the court to the jury, that if they believed both 1029s to be original, the plaintiff ought to recover; and likewise to the answer given by the court to the first point submitted by the plaintiff below. The point was, "If the jury believe 1028 was originally made on the district line, 1029 next south on a maple at creek, and 1030 on a tree next south in Moore's field, the plaintiff has a right to locate his patent at the tract between 1028 and 1030, even if the number found on the ground at the next tract south is an

original donation number, representing 1029." To this the court assented. It must be observed, however, that the defendants below showed no title to the land in dispute, if it be, as the jury found it was, number 1029; nor to any other tract of that number. Then as between the plaintiff and the defendants below, supposing there were two numbers 1029, the plaintiff had a right to elect as to which of the two he would apply his patent, and to say that he meant to hold the land in controversy under it. Had the defendants, being in the possession of the land, held a patent calling also for number 1029, the maxim, *in equali jure potior est conditio defendentis*, might have protected them; but without this or any other right to it, they have no pretence for resisting the plaintiff's right, if it be either of the tracts numbered 1029. The court below was therefore right in instructing the jury as it did in regard to this point.

The eighth error consists of an exception to the answer of the court to the plaintiff's second point. By this point, the court was requested to instruct the jury, "if they believed number 1031, as found on the ground and proven, is original, and marked as a number, that 1030 is the next tract north, 1029 next north of that, and 1028 next north of that, and the general draft shows them standing in numerical succession, they should be as located on the ground; and, therefore, if the jury believes 1031 original, and the newly discovered corner also original, 1031 must hold the land according to the rule of numerical succession, especially as there was another location for 1029." To which the court answered affirmatively, "if both numbers are original, viz., 1031, 1029 on the same tract, then the numerical succession will hold the tract on which the two numbers are put." To this answer we can see no possible ground of exception; because the numerical order, with the circumstance of number 1029 being on another tract, showed very clearly that the number 1029 had been placed on the tract numbered 1031 through mistake.

The ninth error is an exception to the answers given by the court to the defendants' second and fourth points. By their second point, the court was requested to instruct the jury, "if they have any doubts as to the originality and genuineness of the marks on the maple on French Creek, their verdict must be for the defendants." To this the court replied, it was necessary that they should be satisfied of the truth of the plaintiff's case, as claimed by him, otherwise they ought to find for the defendants. This answer would seem not only to be correct, but likewise sufficiently explicit to be understood by the jury; for the plaintiff's right to recover depended entirely, as must have been perfectly understood by the jury, upon the maple tree at the creek being an original corner, and marked as such number 1029. By the fourth point of the defendants, the court was requested to instruct the jury, that "if they believed the corner recently found to be original, that it

VI. — 8

accords with the general draft, as to position, and with vacant land on the east, and 1039 on the west, be the corner at the maple original or not, the plaintiff cannot recover." To which the court answered, that it could not concur, for the point alleged that the location of the tract would be controlled by boundaries east and west, vacant land east, and 1039 west; but if both were original, and the tract at the district line was 1028, and the third tract south was 1030, and 1029 was original, the plaintiff could recover. In this answer we can perceive no error.

Judgment affirmed.