## Rhine *versus* Robinson.

An assignment of a patent by an attorney in fact to which he signs his name " H. P. S., Attorney for J. M.," and in which the name of the assignee is not stated, is not *at law* a good execution of a power to sell land.

But where it contains the acknowledgment of the receipt of the purchase-money from a person named, and it is proved that the money was paid upon the understanding that the land was to be conveyed, it would be sufficient *in equity* to induce a chancellor to decree a conveyance.

Where an individual purchased land under articles of agreement, and with his consent the land was transferred to another, under a parol agreement that the land was to be divided between them, and such division is made, and the parties take possession of their respective parts, such an agreement is not void for want of being authenticated by a memorandum in writing according to the requirements of the statutes of frauds and perjuries.

The notes of counsel showing what a deceased witness testified on a former trial between the same parties touching the same subject-matter, are evidence, when proved to be correct in substance, although the counsel does not recollect the testimony independent of his notes, and does not recollect the cross-examination.

When a party produces a deed from a third person, purporting on its face to have been duly executed and acknowledged, the possession of it by the grantee or by the party producing it, is *prima facie* evidence of delivery

[Rhine v. Robinson.]

ERROR to the Common Pleas of *Juniata county*.

This was an action of ejectment brought by Joseph Robinson against Titus Rhine, to recover 200 acres of land in Lack township, Juniata county. The title to the land·in dispute together with 200 acres adjoining it, was in 1830 vested in John Moore. In December of that year, he entered into an article of agreement with Joseph Robinson, the father of the plaintiff, and the father-in-law of the defendant, to sell him the entire tract. At this time Joseph Robinson and his family were residing on a tract of land which Joseph, the younger, had rented from Jesse Beale, and which he was farming for two or three years previously, although he only attained his majority in January, 1831. Joseph Robinson, when he came to live on Beale's land, was in reduced circumstances, and the property, it was alleged, was all in Joseph's name, who managed and attended to all the business, the elder Robinson and his daughters assisting in the operations of the farm. On the 22d day of March, 1831, Hugh P. Sheller, attorney in fact of John Moore, came to Juniata county, to execute the agreement made with Joseph Robinson, Sr. The parties went before a justice of the peace, who endorsed on the patent, which had issued to John Moore, the following assignment :—

"April first, one thousand eight hundred and thirty-one. I do hereby transfer all my *rite* in and to the within patent and land therein granted unto the *patentee* within named, and to his heirs and assigns, for value received by Joseph Robinson, Junr. Witness my hand and seal date above written.

HUGH P. SHELLER,
*Attorney for John Moore.*"

The word "Junr." was interlined.

This assignment was offered by the plaintiff and objected to by the defendant. That it does not purport to be a transfer of the interest·of John Moore, and is not signed by him, either by himself, or his attorney.

The evidence was admitted under exception by defendant.

The hand-money was paid by the younger Robinson; and he gave his notes for the unpaid purchase-money. These were afterwards lifted by the elder Joseph, but the plaintiff alleged that he had furnished the money for that purpose.

The plaintiff married shortly after, and the families separated, Joseph occupying one end of the farm, and his father and his family the other. And a division line was run between the parties. The defendants alleged this was under an arrangement between the parties that the land was to be equally divided between them, and that the division was an execution of that agreement. The plaintiff contended that the agreement extended no further than to permit his parents to occupy it during their lives. Joseph Robinson left the premises some years afterwards,

[Rhine *v.* Robinson.]

and removed to another place which he bought, having leased to a tenant the land in dispute, who went into possession. He died in 1845, having devised the land in dispute to his daughters, of whom the wife of defendant is one.

On the trial of the cause, Jane Snyder, a daughter of Joseph Robinson, was offered as a witness for the defendant and objected to as incompetent. The defendants showed a deed of John Snyder and Jane his wife, to Nicholas Vaughn (whose wife was also a daughter of Joseph Robinson, and one of the devisees of the land), dated 1st September, 1846. The plaintiff showed that the purchase-money was unpaid, and proved the declarations of John Snyder in the presence of Vaughn, the grantee, that it was not to be paid, unless the title under the will was established. The witness was rejected.

The defendant afterwards offered the same witness, and showed a release, executed and acknowledged in due form, from John Snyder and Jane his wife, to Nicholas Vaughn, dated 15th November, 1853, being after suit brought, with proof that John Snyder and wife verbally acknowledged that the entire purchase-money was paid, and which was also acknowledged in the body of the release, and a receipt for it signed by them at the foot of it. She was still objected to as incompetent, because there was no evidence that this deed was delivered to Vaughn or ever had been in his possession. The witness was rejected.

The plaintiff offered to prove by the notes of testimony taken by Andrew Parker, Esq., what Jesse Beale, a deceased witness, testified in a former suit for the same land between the same parties. Mr. Parker testified as follows :—

" Jesse Beale was examined as a witness on former trial of this cause. He is dead. I took notes of his testimony. I believe my notes contain the substance of what he stated then. X. I don't always pretend to take down the words of the witness; generally I do. I can't say I took down the words of the witness in this case. I believe I intended to take them down, and did take them down as nearly as I could. I have no particular recollection how I took them in this case. I have no particular recollection of how much of the cross-examination I took in this case. Sometimes I omit the sign of cross-examination. I am not a good note taker. I don't take very full notes—not my practice as it is with some gentlemen. I generally get on my paper the substance the witness says on one side and the other. I could not state from recollection what the witness said. My belief is I have the substance of all the witness said that I deemed material to the issue on my notes."

Plaintiffs now offer Mr. Parker to read from his notes of former trial, and to supply any ellipsis in his notes from his recollection, so far as witness can do so.

[Rhine v. Robinson.]

Defendants object; objections overruled, and bill sealed.
The jury found for the plaintiff.

The errors assigned were to the admission of the assignment on the patent. To the rejection of Jane Snyder as a witness, and permitting Mr. Parker's notes of testimony of deceased witness to be read in evidence.

*Woods* and *Doty*, for plaintiff in error.—1. The power to Sheller was not well executed. The name of the principal must appear in the body, or if omitted, the name and seal of the principal, and not that of the attorney, must be appended: Devinney v. Reynolds, 1 *W. & Ser.* 328; Heffernan v. Adams, 7 *Watts* 116. The interlineation if made after the execution avoids the deed, and it is not presumed to have been made before. The presumption is the contrary, unless otherwise proved: Morris v. Vanderin, 1 *Dall.* 67; Prevost v. Gratz, *P. C. C.* 396.

Jane Snyder was excluded on the declaration of the husband that the money was only to be paid in case the title held good. This was clearly errror: Pierce v. Chase, 8 *Man. Rep.* 487; Postens v. Postens, 3 *W. & Ser.* 130; Carmalt v. Platt. The evidence on which the witness was excluded was doubtful, and it should have been received, and the question of interest submitted to the jury: Martin v. Jones, 6 *Barr* 82; Dornick v. Reichenback, 10 *Ser. & R.* 89; Hart v. Heilner, 4 *R.* 407. But after the second deed was produced she was clearly competent. The production of the deed in court was sufficient evidence of delivery: Blight v. Schenk, 10 *Barr* 285; Stevenson v. Mudgett, 10 *N. H. Rep.* 388; Chess v. Chess, 1 *P. R.* 47; Jackson v. Phipps, 2 *John.* 421; Eyrick v. Hetrick, 1 *Harris* 494.

The evidence by Mr. Parker, of what the deceased witness swore, was inadmissible. The notes were not evidence. He might refresh his memory by them, but his recollection must be independent of them: Lightner v. Wike, 4 *Ser. & R.* 205; Wolf v. Wyeth, 11 *Id.* 149.

*Hepburn*, *Parker*, and *Casey*, for defendant in error.—The assignment was properly admitted, for both parties claimed under it. The interlineation was made before signing, as proved in the cause. But, at all events, it was a question for the jury: Stevens v. Martin, 6 *Harris* 101.

Jane Snyder was not excluded on the declarations of her husband, made out of Court. But on declarations made in the presence of the grantee and defendant, and not contradicted by them. The devisees were the real parties. Rhine was but their tenant. As landlords they were liable to him for the costs, and to plaintiff for mesne profits. The interest was not doubtful, but clear and decided. The second deed did not vary the aspect of the case.

[Rhine *v.* Robinson.]

It was never delivered to Vaughn, but to an attorney in the cause to which he was no party in fact.

There was no error in the admission of Mr. Parker's testimony and notes of what deceased witness swore.    The rule established by the later cases is, that where the witness swears that his notes contain substantially all that the witness testified, they are admissible.    This case comes fully within the rule: Moore *v.* Pearson, 6 *W. & Ser.* 51, 53, 54; Cornell *v.* Green, 10 *Ser. & R.* 14; Chess *v.* Chess, 17 *Ser. & R.* 409; Jones *v.* Wood, 4 *Harris* 25; Adams *v.* Stillwell, 1 *Harris* 90; Flanagin *v.* Seibert, *Bright. R.* 61.

The opinion of the court was delivered by

Lewis, C. J.—The fourth and seventh errors assigned do not appear to be pressed in the argument, and are understood to have been abandoned.    As the plaintiff in error says nothing in support of them, and the defendant in error considers them as abandoned, we dismiss them without consideration.

The assignment from "H. P. Sheller, attorney of John Moore," ought regularly to have been signed in the name of the principal by his attorney, and the name of the assignee ought to have been stated.    It was not good *at law*, as the execution of a power to sell and convey land.    But it contained an acknowledgment of the receipt of the consideration-money from Joseph Robinson, Jr., and that it was paid upon the understanding that the land was to be conveyed.    This would be sufficient to induce a chancellor to decree a conveyance, unless some valid objections were shown.    It was therefore proper to admit the instrument in evidence, not as a *legal conveyance*, but as evidence of an *equitable* title to one.    It is a mistake to suppose that the heirs of Joseph Robinson, Sr., necessarily claimed under this assignment.    The evidence shows that the elder Robinson had a prior contract in writing with John Moore for the land.    The heirs might have claimed under that contract.    Moore, after entering into it, had no right to convey to Joseph Robinson, *junior*, unless with the consent of the elder Robinson.    If that consent was obtained upon an agreement that the land was to be equally divided between the father and the son, and if such division had actually taken place, and each continued in possession of his respective part during the life of the elder Robinson, it is against equity to permit the younger Robinson to defeat it on the ground that it was not authenticated by a memorandum in writing according to the requirements of the statute of frauds.    The statute of frauds does not apply to such a case.    The elder Robinson had an equitable title, under his written contract with Moore, and was in possession under that contract until he died.    His devisees and their vendees have been in possession ever since.    Robinson, the

[Rhine v. Robinson.]

younger, claims under an instrument which is so defective in its nature, that he is obliged to ask the aid of equity principles to enforce his claim.   A chancellor would not lend his aid to violate even a mere verbal contract: Patterson v. Martz, 8 *Watts* 378. He that asks the aid of equity must come with clean hands.   If he asks a violation of a moral obligation, his bill will be dismissed:  Boyce v. McCulloch, 3 *W. & Ser.* 429.   It may be that a proper application of these principles to the claim of the plaintiff below, may show that his title is as invalid in *equity* as it is at *law*.   But there was no error in admitting the assignment in evidence.

The notes of counsel, showing what a deceased witness testified to on a former trial between the same parties, touching the same subject-matter, are evidence when proved to be correct in substance, although the counsel did not recollect the testimony independent of his notes, and although he did not recollect the cross-examination: Chess v. Chess et al., 17 *Ser. & R.* 411.   Mr. Parker's testimony respecting the evidence of Jesse Beal, deceased, brought his notes within the rule, and they were properly received in evidence.

When a party produces a deed from a third person, purporting on its face to have been duly executed and acknowledged, the possession of it by the grantee, or by the party producing it, is *prima facie* evidence of delivery.   The deed of the 1st September, 1846, from John Snyder and Jane Snyder to Nicholas Vaughn was *prima facie* evidence that the title of the grantors had been divested on that day.   They could not be made liable for the costs of defending a suit brought afterwards for the land, unless there were covenants in the deed which bound them to defend, or proof given that the defence was conducted at their request.   There are no such covenants in the deed; nor is there any evidence that the defence was conducted at their request.   It is true that there was some evidence to show that the consideration-money had not been paid, and that Snyder's right to recover it might depend upon the result of the verdict in this case.   This, if true, might render him incompetent as a witness on the ground of interest.   But the subsequent deed of 25th November, 1853, with the acknowledgment of the receipt of the consideration-money, made verbally and at the foot of the deed, removed that interest.   There was, therefore, error in rejecting Jane Snyder as incompetent.   For this error the judgment is to be reversed.

Judgment reversed and *venire facias de novo* awarded.