## Keim, Appellant, *v.* City of Reading.

*Statutes—Common law—Repeal—Evidence—Act of May 23, 1887, P. L. 158.*

Statutes are not presumed to make any change in the rules and principles of the common law beyond what is expressed in their provision, or fairly implied in them, in order to give them full operation; rules of the common law are not to be changed by a doubtful implication.

The rule of the common law that where a witness in a former judicial proceeding is dead, or where the presence of such witness cannot be procured at a subsequent judicial proceeding, and no notes of his former testimony exist, such testimony may be proven orally by a person present at the previous trial, is in no way affected or changed by the ninth section of the Evidence Act of May 23, 1887, P. L. 158.

Where a witness before road jurors dies before the case is tried on an appeal from an award of the viewers, the plaintiff may prove by his own testimony, the testimony or the substance of the testimony, given by the deceased witness before the jurors.

*Road law—Condemnation proceedings—Damages—Eminent domain—Municipalities—Expert witness—Evidence.*

Where there is a stone quarry upon land condemned by a city for park and boulevard purposes, evidence of the quality of the stone is pertinent in ascertaining the damages for the land taken.

In such a case where a witness testifies that he had been in the business of buying and selling stone for building purposes for twenty years, that he had hauled stone from the quarry in question several times, and that he had examined the stone time and time again, he is legally competent to testify to the quality of the stone, having particular reference to its hardness, and to its capability of being easily worked into shape for building purposes.

Argued Nov. 16, 1906.    Appeal, No. 188, Oct. T., 1906, by plaintiff, from judgment of C. P. Berks Co., April T., 1899, No. 66, on verdict for plaintiff in case of DeB. Randolph Keim *v.* City of Reading.    Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY and BEAVER, JJ.    Reversed.

Appeal from award of jury of view.

At the trial the following offer was made:

Mr. Hiester: The plaintiff having shown that William M. Fulton testified at a former trial of this case and that the said witness had died and that there are no notes of his examination,

now proposes to give the substance of Mr. Fulton's testimony so far as it may be relevant to this case—the facts detailed by said witness upon examination by counsel for plaintiff and upon cross-examination by counsel for the city of Reading being, that the witness for many years past had been extensively engaged in the business of quarrying stone at the west end of the Penn street bridge, opposite the city of Reading, and had much experience in the operation of quarries and the value of stone similar to that taken from plaintiff's quarry, that the quarries of the witness and of the plaintiff were the only two quarries advantageously located for supplying stone to the city of Reading, that the witness was well acquainted with the plaintiff's quarry, that said quarry produced red stone, which was well adapted and readily and profitably marketable for cellar purposes, and white stone, which was more valuable and well adapted and readily and profitably marketable for facing fronts; that the said quarry could have been further and profitably operated to a very great extent except for the appropriation by the city, and was a valuable part of the plaintiff's property, covering about three acres of the plaintiff's land, and that the appropriation by the city rendered it impossible to proceed further with the operations of the quarry in a safe and profitable manner, but practically ruined and destroyed the quarry.

Mr. Rourke: This offer is objected to as incompetent and inadmissible.

The Court: The objection is sustained; bill sealed for plaintiff. [1]

Henry Knoll, a witness for defendant, was asked these questions:

"Q. Where do you live? A. 713 Birch street. Q. What business are you engaged in? A. I am hauling stones. Q. How long have you been engaged in that line of business? A. Twenty years. Q. Will you state whether or not you are acquainted with the Keim property and with the quarry thereon? A. Yes, sir, I was there already. Q. How often have you been there? A. A good many times; I hauled some stones away there already. Q. When did you last see the quarry? A. I wasn't in the quarry for—that I didn't work, for a couple of years. Q. Couple of years? A. Yes, sir. Q. Before that you worked at this very quarry? A. Yes, sir, I hauled stones

away. Q. And for what length of time? A. Well, I didn't haul so many away." Q. What time did it go over—how much time were you there? A. When they had a pile of stone there I hauled them away until they were all. Q. Did you ever make any examination of the stone, its quality? A. Well, there ain't any such nice stones; the masons don't like to work them. Q. You made an examination of the stone time and again, did you not? A. Yes, sir. Q. Now, what is the kind of stone that you find there?"

Mr. Hiester: We object; he is not an expert on this subject.

" Q. Do you know anything about stone, or about the quality of stone? A. I ought to know; I am long enough in the business. Q. How long have you been in that business? A. Twenty years. Q. Then you do know about the quality of stone? A. Yes, sir. Q. And the uses to which they can be put? A. Yes, sir. Q. Tell us what the quality of these stones is and to what use they can be put?"

Mr. Hiester: Objected to, that the witness has not been shown to be an expert on stones.

" Q. You deal in stones and have during these twenty years? A. Yes, sir. Q. All kinds of stones? A. Yes, sir. Q. Buy and sell stones for building purposes? A. Yes, sir; that is what I am hauling. Q. How long have you been doing that? A. Twenty years. Q. What was the extent of your business during these twenty years in that line? A. Well, hauling stones, that is the most business I have. Q. That was the only business that you have pursued in twenty years, isn't it? A. Yes, sir. Q. That is right, isn't it? A. Yes, sir. Q. You have dealt in stone and nothing else during all these years? A. No, sir. Once in awhile I dug a cellar. Q. Now, tell us what the condition or quality of these stones in the Keim quarry is or was in 1896?"

Mr. Hiester: We object, that the witness has not been shown to be an expert in the kind of stones quarried from this quarry.

The Court: The witness having testified that he has for twenty years been engaged in the business of buying and selling stones for building purposes, and that he hauled stone from this very quarry and was acquainted with these stones, I think he may be permitted to state what the quality of the stone is; bill sealed for plaintiff. [2]

Verdict and judgment for plaintiff for $725.70. Plaintiff appealed.

*Errors assigned* were (1, 2) ruling on evidence, quoting the bill of exceptions.

*C. H. Ruhl* and *Isaac Hiester*, with them *A. K. Stauffer*, for appellant.—The Act of Assembly of May 23, 1887, P. L. 158, entitled, "An act relating to the competency of witnesses and to the rules of evidence in civil and criminal cases, revising, declaring and consolidating some of the existing acts and rules of law upon these subjects and also extending some of the provisions of the same," does not abrogate the rule of the common law, and render incompetent the testimony offered by the plaintiff at the trial of this case : Erie v. Bootz, 72 Pa. 196.

Defendant's witness, Henry Knoll, was not competent to testify as an expert, as to the quality of the deposit of stone upon plaintiff's premises : Hope v. Phila. & Western R. R. Co., 211 Pa. 401.

*William J. Rourke*, city solicitor, for appellee.

OPINION BY RICE, P. J., February 25, 1907 :

This case came into the court below by appeal from the report of viewers appointed to assess the damages sustained by the plaintiff by the city's appropriation of his land for park and boulevard purposes. The first assignment of error relates to the exclusion of plaintiff's offer to prove by his own testimony the testimony, or the substance of the testimony, of William M. Fulton, who testified before the viewers—said Fulton having died between the hearing and the trial of the case in the court below, and no notes of his testimony having been taken. The question turns upon the effect to be given to the ninth section of the Act of May 23, 1887, P. L. 158, upon the common-law rule relating to such testimony. The section reads as follows : "Whenever any person has been examined as a witness in any civil proceeding before any tribunal of this commonwealth or conducted by virtue of its order or direction, if such witness afterwards die, or be out of the jurisdiction so that he cannot be effectively served with a subpœna, or if he cannot be found, or if he become incompetent to testify for

any legally sufficient reason, and if the party, against whom notes of the testimony of such witness are offered, had actual or constructive notice of the examination and an opportunity to be present and examine or cross-examine, properly proven notes of the examination of such witness shall be competent evidence in any civil issue which may exist at the time of his examination, or which may be afterwards formed between the same parties and involving the same subject-matter as that upon which such witness was so examined; but for the purpose of contradicting a witness, the testimony given by him in another, a former proceeding, may be orally proved."

The chief reasons for the exclusion of hearsay testimony are the want of the sanction of an oath, and of any opportunity to cross-examine the witness. But where testimony was given under oath, in a judicial proceeding, in which the adverse litigant had the power to cross-examine, the testimony so given was admissible at common law, after the decease of the witness, in a subsequent trial of the same issue, or of another issue between the same parties involving the same subject-matter. See 1 Greenleaf's Evidence, sec. 163; 1 Taylor on Evidence (8th ed.), sec. 434; 1 Wharton on Evidence, sec. 177. The rule was not restricted to cases where the witness had died, but included other cases, not necessary to be enumerated here, in which, otherwise, the witness's knowledge of the facts would not be available. See Walbridge v. Knipper, 96 Pa. 48, and cases therein cited. Apart from formal depositions, there were two recognized modes whereby the testimony of the witness was reproduced: First, by properly proven notes of his testimony; secondly, by the testimony of a person who would swear from his memory to its having been given. For a time in England the rule was that such person must be required to repeat the precise words of the witness, and that testimony merely to the effect of them was inadmissible. There is also an early Pennsylvania case in which this view seems to have been entertained by DUNCAN, J., who said: "In giving evidence of what a witness swore at a former trial, great strictness is required as to the very words uttered by him." But after the cases of Cornell v. Green, 10 S. & R. 14, and Wolf v. Wyeth, 11 S. & R. 149, were decided, and prior to the evidence act of 1887, the law was well settled in Pennsylvania,

and in all but two or three jurisdictions of this country, that if the witness was able to state the substance of what was sworn to on the particular subject at the former trial, it was sufficient: 1 Greenleaf's Evidence, sec. 165; 16 Cyc. of Law and Procedure, 1102; Chess v. Chess, 17 S. & R. 409; Moore v. Pearson, 6 W. & S. 51; Rhine v. Robinson, 27 Pa. 30; Brown v. Commonwealth, 73 Pa. 321; Phila. & Reading R. R. Co. v. Spearen, 47 Pa. 300. In some of these cases, it is true, there were notes of the substance of the testimony, but they all recognize the rule as we have stated it. In Walbridge v. Knipper, 96 Pa. 48, decided in 1880, after reargument, the trial court rejected an offer to prove what the plaintiff had testified before arbitrators—he having become incompetent since by reason of the death of the defendant—because the testimony was not reduced to writing, and the defendant was not present. This was held to be error, and as to the mode of reproducing the testimony of such witnesses it was held, that it may be done by introducing their depositions, properly taken and authenticated, or notes of their testimony, the accuracy of which has been shown, as in Pratt v. Patterson, 81 Pa. 114, or when not perpetuated by depositions or preserved in notes of trial, "by proving what they testified to on the former trial, by some person who heard them testify and remembers their testimony or the substance thereof." The latest civil case in which the subject is particularly discussed is Hepler v. Mt. Carmel Savings Bk., 97 Pa. 420, decided in 1881, wherein after reviewing the authorities Justice GORDON stated the rule as follows: "From this I take the rule to be, where the witness on the stand cannot recollect the very words of the deceased witness, he may state in his own language the facts as detailed by that witness, as they were impressed on his mind at the time; and this applies as well to the cross-examination as to the examination in chief. All that is required is that the recollection of the witness be reasonably clear as to the fact testified to, and how, if at all, such testimony was affected by the cross-examination. As a rule, this is all that can be required of ordinary witnesses, and the adoption of a greater degree of strictness would result in the total exclusion of such evidence, for the exception is rare where a conscientious witness will undertake to do more than this."

It is thus seen that from Mayor of Doncaster v. Day, 3 Taunt. 262, in which Lord MANSFIELD held that " the former evidence may be proved by any person who will swear from his memory to its having been given," down to the latest decision of our Supreme Court prior to the act of 1887, it was uniformly held, the other conditions being present for the admission of the testimony of a witness given on a former trial, that such testimony could be orally proved ; and while there was some divergence of opinion as to the necessity of giving the very words of the witness, no rule of evidence was more firmly established or more universally recognized. The reason for the rule itself, and for the Pennsylvania construction of it, was necessity. We quote from the opinion of Judge GIBSON in Cornell v. Green, 10 S. & R. 14 : " The truth is that evidence of what a deceased witness said, being inferior in its nature to a personal examination before the jury, is admissible only from necessity and on the ground that better evidence does not remain behind, the jury being left to form their own judgment of the accuracy of the narration. I cannot, therefore, see why the same necessity which opens the way for secondary evidence of the very words of a deceased witness should not open the way also for the substance of his testimony when his very words cannot be recollected, or discover the policy of a rule which should shut out the little light that is left, when it is all that is left, merely because it may not be sufficient to remove everything like obscurity." The rule was a highly useful one, and when it is remembered that in many judicial proceedings, such as trials before justices of the peace, before arbitrators and viewers in such a proceeding as this, the testimony is not required to be, and is not customarily, reduced to writing, it will be seen that the same necessity for permitting it to be orally proved still exists, for, it is to be observed, the act of 1887 provides no substitute for this mode of reproducing the testimony, either where no notes of evidence were taken or where they have been lost or destroyed. The next point to be noticed is, that the act of 1887, while particularly mentioning the statutes that were superseded or repealed, does not in express words abrogate this ancient, firmly established and useful rule of the common law, contains no provision which is repugnant to it, and, as we have suggested, provides no sub-

stitute for it.   Statutes are not presumed to make any change in the rules and principles of the common law beyond what is expressed in their provisions, or fairly implied in them, in order to give them full operation ; rules of the common law are not to be changed by doubtful implication : Endlich on Interpretation of Statutes, sec. 127.   Indeed, the rule has been more broadly stated as follows : " In all doubtful matters and where the expression is in general terms, statutes are to receive such construction as may be agreeable to the rules of the common law in cases of that nature, for statutes are not presumed to make any alteration in the common law farther or otherwise than the act expressly declares ; therefore, in all general matters, the law presumes the act did not intend to make any alteration, for if the legislature had had that design they would have expressed it in the act : " Pettit v. Fretz's Executor, 33 Pa. 118.   And the view has been expressed that an intention on the part of the legislature to alter the statute law is sometimes presumed upon much slighter grounds than would support any such inference in the case of the common law : Wilberforce Stat. L. 21, cited in above section of Judge ENDLICH's work.   See also the remarks of the late Justice DEAN to the same effect in Smith v. Altoona & Phillipsburg, etc., R. R. Co., 182 Pa. 139.   We are referred to the case of Johnston's Est., 33 Pa. 511, where it was held that a subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former.   It is worthy of notice that in this very case Justice WOODWARD cited Townsend's Case, Plowd. Com. 111, in which it was said : " But if a thing is at common law, a statute cannot restrain it unless it be in negative words."   The purpose of the legislature, as exhibited by the title as well as the contents of the evidence act, was to declare and revise " some of the rules of law " relating to the subject of evidence, not all of them, and this would be literally fulfilled by construing the section to apply to cases where the testimony of the witness had been preserved by notes of evidence.   When we go beyond that, and speculate as to whether the legislature intended more, we enter the domain of doubt.   We are not to

be understood as saying that a statute which undertakes to revise and cover the whole subject-matter may not, by implication, abrogate every rule of the common law upon the same subject; but the foregoing citations, and many others that may be made, show that if there be no negative words and no express declaration that the act is intended to be a complete and exclusive rule of law upon the general subject that it touches at any point, the implication must be very clear to warrant the courts in giving it that effect.   It is not to be denied that the proviso that " for the purpose of contradicting a witness the testimony given by him in another, a former proceeding, may be orally proved," furnishes some ground for plausible argument that this was intended to be the only instance.   The argument would be conclusive if sec. 8 were a new law, making evidence as to the testimony of witnesses in former proceedings competent which was not competent at common law. But it does not purport to be a new law upon that subject; that is to say, it is not a rule out of the course of the common law, but as far as it goes is simply declaratory of the common law.   There is ground for speculation as to all the reasons for introducing the proviso, but the inference therefrom of an intent to abrogate this common-law rule is not nearly so strong as the inference of an intent not to do so to be drawn from the omission to declare, as could have been done in two or three words, that the mode specifically mentioned is exclusive of all others.   As has been said of the act of 1869, its predecessor, the act of 1887 is an enabling, and, generally speaking, not a disqualifying act.   Having regard to its general purpose, and to all of the considerations which we have suggested, we are unable to conclude that there is a necessary and unavoidable implication of an intent to shut out oral proof of testimony of this kind, where there is no better mode of proving it.

We are not aware of any civil case in which this question has been passed upon, but it will be noticed that the same method of construction which would shut out this testimony, if applied to the third section of the act would prevent the introduction on the trial of a criminal case of the testimony of a deceased witness given on the preliminary hearing before a magistrate.   Prior to the act of 1887 this was competent, Brown v. Commonwealth, 73 Pa. 321, and since that act it

has been decided that the testimony of a witness given at a preliminary hearing, he having died in the meantime, could be proved at the trial of the case : Commonwealth v. Keck, 148 Pa. 639. The act makes no provision for such a case. This tends to show that the act of 1887 is not to be construed as furnishing a complete and exclusive rule relative to proof of the former testimony of witnesses. The case of Commonwealth v. Lenousky, 206 Pa. 277, may also be referred to, although it would be unfair to cite it as a conclusive decision of the question.

At common law the testimony could be reproduced by the testimony of any competent witness ; therefore when parties were made competent witnesses they became legally competent for this purpose as well as for any other. The plaintiff testified that he was present at the hearing and heard the witness testify, and the offer was to prove the substance of the witness's testimony upon his cross-examination as well as upon his examination in chief. Prima facie the plaintiff was qualified to give the testimony offered ; if the defendant's counsel desired to test his memory further, or to inquire more particularly whether he heard the entire testimony of the deceased witness, he could have done so. Not having availed himself of this privilege, it would be unfair on this appeal to hold that the offer was properly rejected upon the ground that the plaintiff did not say in so many words that he heard the entire testimony. The fair inference from what he said is that he did hear it. It is suggested further that the plaintiff was not harmed by the rejection of the offer, because he got the benefit of it in his own testimony as to the value of the property. A careful examination of his testimony fails to convince us that this position is tenable. Upon a full view of the entire subject we are constrained to hold that there was error in the rejection of the offer.

There being a stone quarry upon the land evidence of the quality of the stone was pertinent. Henry Knoll testified that he had been in the business of buying and selling stone for building purposes for twenty years, that he had hauled stone from this quarry for others several times, and that he had examined the stone time and time again. Under this showing he was legally competent to testify to the quality of the stone,

having particular reference to its hardness and to its capability of being easily worked into shape for building purposes. Therefore the second assignment is not sustained.

Judgment reversed and venire facias de novo awarded.