## Brown *versus* The Commonwealth.

1. The Criminal Court of Dauphin, Lebanon and Schuylkill counties, created by the Act of April 18th 1867, is constitutional, and it has, under Act of April 21st 1870, concurrent jurisdiction with Courts of Oyer and Terminer, &c., of Schuylkill county.

2. On the hearing before a justice of the peace of a prisoner charged with murder, the testimony of a witness for the Commonwealth was taken in writing. The witness having died, the notes of his testimony were admissible on the trial.

3. A man was found dead in a road about three hundred yards from his house with marks of violence. His wife was found in the house the same day with wounds of which she afterwards died, and there were marks about the house showing that it had been robbed. *Held*, that the dying declarations of the wife were not evidence for the Commonwealth on the trial for the murder of the husband.

4. The sheriff and jury commissioners, after selecting names for jurors, placed them in the wheel, which was sealed with but one seal. *Held*, that

23 P. F. Smith—21

[Brown *v.* Commonwealth.]

the array of jurors drawn from the wheel should have been set aside and
the indictment found by the grand jury quashed.

March 7th 1873.     Before READ, C. J., AGNEW, SHARSWOOD
and MERCUR, JJ.     WILLIAMS, J., at Nisi Prius.

Error to the Criminal Court of *Schuylkill county*: No. 78, to
January Term 1873.

At April Term 1872 of the court below, the grand jury found
a true bill against Joseph Brown for the murder of Daniel S.
Kraemer.

On the 27th of May 1872, he challenged the array of jurors,
" for the reason that the sheriff and jury commissioners of Schuyl-
kill county, at the time of the selecting and placing in the wheel
the names of jurors, did not secure the jury-wheel in the manner
required by law, they having failed to secure the said wheel by
sealing the same with their respective seals, the said wheel being
sealed with only one seal, if any."

On the same day the prisoner moved to quash the indictment,
for the same reason as that given for challenging the array.

The court (Green, P. J.) heard the testimony of the jury com-
missioners and the sheriff on the challenge and the motion to quash.

The evidence was that after the wheel was filled it was locked
and placed in a box, which was also locked with a padlock, tape
drawn across the lid of the box, tied and sealed; there was but
one seal put on the box, that was the private seal of one of the
jury commissioners; both jury commissioners were present when
the box was locked and sealed; the sheriff was not present; the
key was obtained from him and returned to him; the box had
always been kept in that way, and had always been found by the
jury commissioners intact and where they left it.

On the 28th of May the court sustained the challenge and or-
dered the sheriff and jury commissioners to take all the names of
jurors from the wheel, and deposit new names, &c.

On the 29th of May the court revoked the foregoing order, " no
action having been taken as yet by the said sheriff and jury com-
missioners in the premises."

On the 27th of August the court overruled the motion to quash
the indictment.

At the request of the prisoner, the court sealed bills of exception.

The prisoner was indicted at the same time for the murder of
Annetta Kraemer, the wife of Daniel S. Kraemer.

The prisoner pleaded to the jurisdiction of the court, alleging
that the Act of April 18th 1867, establishing the Criminal Courts
of Dauphin, Lebanon and Schuylkill, and its supplement of April
21st 1870, were unconstitutional.  The court overruled the plea.

The indictment was tried August 27th 1872.

The evidence was that the deceased was found on the 26th of

[Brown v. Commonwealth.]

February 1872, in a lane about three hundred yards from his house, and that the wife shortly before, on the same day, was found on her bed in the house, with her head beaten badly; she died from the injuries on the 4th of March.   The husband was about sixty years old, and the wife about fifty.

Daniel M. Kraemer, a son of the deceased, not living at home, 'testified that his father was alive on Sunday, the 25th of February.   He went to the house on Monday morning before 7 o'clock, and in a back room found his mother lying on her bed insensible; he found blood around the front room; she was covered with blood so that her face could not be seen; she had her day clothes on; he then went out and found his father lying on his back in the road; there was blood on his face and in the road; he, with some neighbors, then returned to the house, they found a chest and desk in the front room broken open.

Other witnesses testified to similar circumstances, and also to the bruised and wounded condition of Mrs. Kraemer; also, that they found coin in a secret drawer which was unopened, of the chest and also in the bottom of an old-fashioned clock.

There was a large amount of evidence tending to connect the prisoner with the murders.

Sophia Fehr, a sister of Mrs. Kraemer, testified that she came to the house on Monday morning and found Mrs. Kraemer lying on the bed, bloody and bruised; she was then conscious.   The witness testified much in detail as to the condition of her sister and also as to there having been money in the house.

The Commonwealth having examined a great number of witnesses and having shown that one Isaac Hummel had been arrested with the prisoner upon suspicion of being connected with the murder, called B. B. McCool, Esq., a member of the Schuylkill county bar, who testified:—

"I was present at the examination of Charles Ewing before 'Squire Reed in this court-house.   'Squire Reed is a justice of the peace in the borough of Pottsville.   Charles Ewing is dead. He was killed on the 14th day of April last on Market street, in the borough of Pottsville.   Joseph Brown was present at that hearing and represented by counsel.   There were two members of the bar, Messrs. Farquhar and Strouse, there.   They represented Brown and Hummel.   It was on a preliminary hearing before the committing magistrate.   I took notes of the testimony as given by Charles Ewing; (notes shown witness) these are the notes.   These notes are correct of Charles Ewing's testimony.   Mr. Ewing was very much excited and embarrassed, and not very coherent.   I took down nearly every word he said, and the order in which he said it, and I think in his language.   I will say that I think the notes contain the exact words of the witness.   In taking the notes I made the question and answer to conform to the exact words of

the attorney and witness. I had not time to write down the questions, but took questions and answers together. I was not acting as counsel, but as clerk for the district attorney, at his request. I am now counsel in the case, retained for the Commonwealth. I think my notes contain the exact words of the witness."

The Commonwealth then offered to read the testimony of Ewing, from the notes of Mr. McCool. The offer was objected to by the defendant, admitted by the court, and a bill of exceptions sealed.

The Commonwealth recalled Sophia Fehr, and proposed to examine her as to dying declarations of Mrs. Kraemer on Monday and Tuesday, upon the subject of the murder of her husband.

The defendant objected, amongst other things, that the dying declarations of Mrs. Kraemer, as a part of the *res gestæ*, or surrounding circumstances, proposed to be offered, on Monday following, are inadmissible, because not accompanying the transactions, not concomitant with the murder of Daniel S. Kraemer, on Sunday evening, preceding, but are mere hearsay evidence, not made in the presence of the prisoner; and they are irrelevant in this issue as to the murder of Daniel S. Kraemer.

The court admitted the offer and sealed a bill of exceptions.

The Commonwealth then gave in evidence the declarations of Mrs. Kraemer tending to connect the prisoner with the murder.

In the course of the trial a number of exceptions were taken to the rulings of the court on questions of evidence, and also to the charge of the court; none of which were considered by the Supreme Court.

The jury found the prisoner guilty of murder in the first degree. A motion for a new trial was made; it was overruled; and on the 7th of October 1872, the prisoner was sentenced to be hanged.

The prisoner sued out a writ of error.

He assigned for error that the court erred—

1. In not quashing the indictment, because the grand jury was drawn from a wheel not secured according to law.

2. In revoking the order directing the sheriff and jury commissioners to make a new selection of jurors, &c.

3. In overruling the motion to quash the array of petit jurors.

4. In overruling defendant's plea to the jurisdiction of the court.

5. In admitting the notes of the testimony of Charles Ewing, a deceased witness, before the committing magistrate to be read in evidence.

14. In admitting evidence of the dying declarations of Annetta Kraemer, the wife of deceased.

*G. R. Kaercher, F. G. Farquhar,* and *B. W. Cummings,* for plaintiff in error.

[Brown v. Commonwealth.]

*J. B. Reilly*, District Attorney, and *L. Bartholomew* (with whom was *B. B. McCool*), for the Commonwealth.

The opinion of the court was delivered, April 5th 1873, by

READ, C. J.—This is a writ of error to the Criminal Court of Schuylkill county, sued out under the Act of the 15th February 1870, upon the oath of the defendant, and brings up the whole record.

The constitutionality and jurisdiction of this court have been finally settled in Commonwealth *v.* Green, 8 P. F. Smith 226, and in Commonwealth *v.* Hipple, 19 Id. 9, and its concurrent jurisdiction with the Courts of Quarter Sessions of the Peace and Oyer and Terminer and General Jail Delivery of the County of Schuylkill, is fully recognised and established by the Act of 22d April 1870 (Pamph. L. 1254), and the court below were therefore right in overruling the plea to the jurisdiction, entered by the defendant.

On the preliminary hearing before the committing magistrate, the defendant and his counsel being present, a witness was examined whose testimony was taken down by defendant's counsel, and the witness having died before the trial, the notes of his evidence proved by the counsel under oath, were offered in evidence, objected to and admitted. It was objected that by the Constitution of the state, the defendant was entitled to meet the witnesses face to face.

The doctrine on this subject is thus laid down in the 3d volume of Russell on Crimes, by Greaves, 4th edition, 1865, page 249. " If there has been a previous criminal prosecution between the same parties, and the point in issue was the same, the testimony of a deceased witness, given upon oath at the former trial, is admissible on the subsequent trial, and may be proved by any one who heard him give evidence," and the same is repeated at page 424, in the note. We find the same rule in 1 Phillips & Arnold's Evidence, pp. 306–7, and in 1 Pitt Taylor on Evidence, 4th edition, 1864, pp. 445 447. Dr. Wharton, in his valuable Treatise on Criminal Law in the United States, vol. 1, p. 667, says: " The testimony of a deceased witness given at a former trial or examination, may be proved at a subsequent trial by persons who heard him testify. Even the notes of counsel of the testimony of such witness on a former trial between the same parties, touching the same subject-matter, are evidence when proved to be correct in substance, although the counsel does not recollect the testimony independently of his notes. The better opinion seems to be that it is sufficient to prove the substance of what the deceased witness said, provided the material particulars are stated, though it has been sometimes held, that unless the precise words could be given, the testimony would be rejected."

In The Commonwealth *v.* Richards, 18 Pick. 434, it was held that the 12th article of the Declaration of Rights, which provides

[Brown *v.* Commonwealth.]

that in criminal cases the accused shall have the right "to meet the witnesses against him face to face," is not *violated by the admission* of testimony in a criminal trial before a jury to prove what a deceased witness testified at the preliminary examination of the accused before a justice of the peace."

This case was affirmed seven years afterwards in Warren *v.* Nichols, in 6 Metc. 261, and the further ruling in that case "that the whole of the testimony of the deceased witness upon the point in question, and the *precise words used by him* must be proved," was substantially affirmed. Hubbard, Justice, dissented from this ruling and assigned very cogent reasons against it. "As the decision now stands," says this able judge, "it prescribes a rule for the admission of testimony, which the imperfection of our nature, in the construction of our memories, will not warrant. It in truth excludes the thing it proposes to admit, and at the same time opens a door for knaves to enter, where honest men cannot approach." "Other learned judges have maintaned, that a rule so rigid was unwise, and I confess, I prefer the reasoning of Gibson, J., in the case of Cornell *v.* Green, 10 S. & R. 16, to that of the learned judge in Commonwealth *v.* Richards, and with him agrees also the learned author of the Treatise on the Law of Evidence." 1 Greenl. § 165.

Upon this subject the ablest discussion of the whole question is to be found in the opinion of Judge Drummond, in The United States *v.* Macomb, 5 McLane's Rep. 286, delivered in the Circuit Court of the United States for the District of Illinois, at July Term 1851. At the preliminary examination, a witness, since deceased, testified in relation to the offence, which was robbing the mail. The accused was present and his counsel cross-examined the witness. Witnesses were permitted on a trial before a jury, under an indictment found for the same offence, to prove what the deceased witness testified to at the preliminary examination. It is sufficient in such case to prove substantially, all that the deceased witness testified upon the particular subject of inquiry. A decision upon the same point is to be found in United States *v.* White, 5 Cranch's Circuit Court Rep. 460.

The 6th article of the amendments to the Constitution of the United States provides that in all criminal prosecutions the accused shall enjoy the right "to be confronted with the witnesses against him."

The Constitution of Pennsylvania of 1776, provided "that in all prosecutions for criminal offences, a man hath a right to be confronted with the witnesses." The Declaration of Rights, in the Constitution of 1790, changed the phraseology from confronting, to "to meet the witnesses face to face."

The doctrine enunciated by Judge Drummond in 1851, was followed by the Supreme Court of Missouri, after a very exhaustive argument on the constitutional question, in The State *v.* Mc-

[Brown *v.* Commonwealth.]

O'Blenis, in 24 Missouri (3 Jones) 402, and The State *v.* Baker, Id. 437, in 1857, and in The State *v.* Houser, 26 Missouri (5 Jones 431), in 1858, and by the Supreme Court of Ohio in Summons *v.* The State, in 5 Ohio (N. S.) 325, in 1856.

In this state the most liberal rule has been adopted, in relation to the evidence of what was testified to by a deceased witness on a former trial or examination, as will be seen by referring to Cornell *v.* Green, 10 S. & R. 14; Chess *v.* Chess, 17 Id. 409; Moore *v.* Pearson, 6 W. & S. 50, and Rhine *v.* Robinson, 3 Casey 30, in which case Chief Justice Lewis said : " The notes of counsel, showing what a deceased witness testified to on a former trial between the same parties touching the same subject-matter, are evidence when proved to be correct in substance, although the counsel did not recollect the testimony independent of his notes, and although he did not recollect the cross-examination." To which may be added the decision in Phila. & Reading R. R. *v.* Spearen, 11 Wright 306, the opinion being delivered by my brother Agnew.

There was, therefore, no error in the court admitting the notes of Mr. McCool of the testimony of Ewing, a deceased witness, in the examination before the committing magistrate, or the notes of any other counsel, or those of the committing magistrate himself.

" Upon the trial of any indictment for murder, or voluntary manslaughter, it shall and may be lawful for the defendant or defendants to except to any decision of the court, upon any point of evidence or law, which exception shall be noted by the court, and filed of record as in civil cases, and a writ of error to the Supreme Court may be taken by the defendant or defendants after conviction and sentence." " If, during the trial upon any indictment for murder or voluntary manslaughter, the court shall be required by the defendant or defendants to give an opinion upon any point submitted and stated in writing, it shall be the duty of the court to answer the same fully and file the point and answer, with the records of the case:" Criminal Procedure Act of 31st March 1860, §§ 57, 58, Pamph. L. 444.

Under this head is ranged the reception under objection of the dying declarations of Mrs. Kraemer, the wife of the murdered man. " The dying declarations of a person who expects to die, respecting the circumstances under which he received a mortal injury, are constantly admitted in criminal prosecutions, where the death is the subject of criminal inquiry, though the prosecution be for manslaughter ; though the accused was not present when they were made, and had no opportunity for cross-examination, and against or in favor of the party charged with the death." " When every hope of this world is gone, when every motive to falsehood is silenced, and the mind is induced by the most powerful considerations to speak the truth, a situation so solemn and awful is con-

[Brown *v.* Commonwealth.]

sidered by the law as creating the most impressive of sanctions." 1 Wharton's Criminal Law, § 669; 3 Russell by Greaves 250; 1 Greenleaf, §§ 156, 162, 346; 1 Taylor on Evidence 616.

"The contitutional provision," says Dr. Wharton, "that the accused shall be confronted by the witnesses against him does not *abrogate* the common law principle, that the declarations *in extremis* of the murdered person in such cases are admissible in evidence:" Id.

In Woodsides *v.* The State, 2 Howard (Miss.) 655, the court, at p. 665, in answer to the constitutional objection that the prisoner had a right to be confronted with the witness against him, say: "But it is upon the ground alone, that the murdered individual is not a witness, that his declarations made *in extremis* can be offered in evidence upon the trial of the accused. If he were or could be a witness, his declaration upon the clearest principle would be inadmissible. His declarations are regarded as facts or circumstances connected with the murder, which, when they are established by oral testimony, the law has declared to be evidence. It is the individual who swears to the statements of the deceased that is the witness, not the deceased." In Anthony *v.* The State of Tennessee, 1 Meigs 277, the court say, upon the first ground of objection, "We are all of opinion that the Bill of Rights cannot be construed to prevent declarations properly made *in articulo mortis* from being given in evidence against defendants in cases of homicide."

The same doctrine is to be found in The State of Iowa *v.* Nash, 7 Iowa 347, and in Robbins *v.* State of Ohio, 8 Ohio St. R. (N. S.) 131; Com. *v.* Casey, 11 Cushing 417, and very directly in Com. *v.* Carey, 12 Id. 246. There are also various statements to the same effect in most of the decisions cited above in relation to the admission of evidence of the testimony of a deceased witness.

All these cases are confined to the dying declarations of the murdered person upon the trial of the individual accused of the murder. At the York assizes on the 17th July 1837, in Rex *v.* Baker, 2 Moo. & Rob. 53, it was held, on an indictment against a prisoner for the murder of A. by poison, which was also taken by B., who died in consequence, that B.'s dying declarations were admissible. Coltman, J., after consulting Parke, B., expressed himself of opinion that as it was all one transaction, the declarations were admissible, and accordingly allowed them to go to the jury, but he said he would reserve the point for the opinion of the judges. The prisoner was acquitted. This case is entitled to greater weight, as Baron Parke, the year before, in Stobart *v.* Dryden, 1 Mees. & Welsby 615, had been considering the question of dying declarations, after full argument, and delivered the opinion of the court. This case is mentioned in 1 Phillips and Arnold 243, in 3 Russell 268; 1 Taylor on Evidence 618.

In The State *v.* Terrell, 12 Richardson (S. C.) 321, it was held upon the trial of an indictment for the murder of A. by poison,

[Brown v. Commonwealth.]

which was taken at the same time by B. and C., both of whom as well as A. died from its effects, the dying declarations of B. are admissible against the prisoner, although the general rule seems to be, that dying declarations are admissible only, where the indictment is for the murder of the party making the declarations.   The murder was effected by putting strychnine in a bottle of whiskey, administered by the defendant, at the same time, to three persons, and caused the deaths of the grandfather and uncle of the prisoner, and of a third person, whose dying declarations were received in evidence upon the trial of the accused for the murder of his grandfather.

Upon the authority of these cases the learned judge admitted the dying declarations of the wife, upon the trial of the defendant for the murder of her husband.   In this there was error, for the husband was found dead on Monday morning 26th Feb. 1872, three hundred yards from his dwelling, and his wife was discovered on the same morning lying across her bed in the house in an insensible condition and with her face and head terribly beaten and disfigured.   Kraemer and his wife were both advanced in years and there was no doubt that robbery of gold and silver which was known to be in the house led to their murder, but we do not see any facts that would bring these dying declarations of Mrs. Kraemer within those two authorities, supposing them to be good law.

If the prisoner had been tried upon the indictment for the murder of Mrs. Kraemer, her dying declarations would have been strictly legal evidence against him.

The array of grand and petit jurors was challenged from their being drawn from a jury-wheel not secured according to law.   By the existing law two jury commissioners are elected triennially, who are substituted for the county commissioners, and who with the law judges and the sheriff perform the duties prescribed by the 2d section of the Act of 10th April 1867 (Pamph. L. 62), who shall "place the names of the persons so selected in the proper jury-wheel, and the said *jury-wheel, locked as now required by law,* shall remain in the custody of the said *jury commissioners* and *the keys thereof* in the custody of the *sheriff* of the said county."

The mode of drawing the jurors is prescribed by the 3d section, and the 4th section, after repeating certain acts, provides "that all acts and parts of Acts of Assembly now in force in relation to the custody, sealing and unsealing, locking and opening of the jury-wheel of the respective county, and all Acts and parts of Acts of Assembly now in force imposing any penalty or punishment on the sheriff and county commissioners or either of them for anything done or omitted by them or either of them, in relation to the keeping, locking, opening, sealing or breaking the seal of any jury-wheel, or in relation to the selecting or drawing of jurors shall be taken, deemed and held to apply to the said jury commissioners and

[Brown *v.* Commonwealth.]

sheriff." The duties of the sheriff and commissioners, now jury commissioners, are distinctly prescribed, as may be seen by reference to 1 Brightly's Digest 830, 831.

The 16th paragraph, which is sect. 90 of the Act of 14th April 1834, expressly provides, " as soon as the selection of jurors and the depositing of their names in the wheel as aforesaid shall be completed, the sheriff shall cause the same to be locked and secured by sealing-wax, and thereon the said sheriff and (jury) commissioners shall impress distinctly their respective seals." It is the *jury-wheel* that is to be locked and sealed.

It is clear that only one seal was used, and that it was not sealed with the respective seals of the two jury commissioners and sheriff, making three seals. Of course this was error, and the array so challenged should have been set aside and the indictment for the murder of Kraemer should have been quashed. The same objection will apply to the indictment for the murder of Mrs. Kraemer. New bills therefore should be presented to a new grand jury.

Strict attention should be paid to the execution of the jury law, so as to avoid these technical objections, which if not made at the time, are cured by the 53d section of the Criminal Procedure Act of 31st March 1860.

> The judgment is reversed and the record remanded, with this opinion, setting forth the causes of reversal to the court below for further proceeding.