### W. W. WARREN v. STATE.

No. A-597.   Opinion Filed May 23, 1911.

(115 Pac. 812.)

1.   **APPEAL AND ERROR—Harmless Error—Selection of Jury.** Even though the trial court may improperly overrule a challenge for cause to a juror, yet if the defendant peremptorily challenges said juror, and if it appears that the defendant did not exhaust all of his peremptory challenges, and that no objectionable juror was forced on the defendant, the error of the court in improperly overruling such challenge will be harmless, and will not be ground for the reversal of a conviction.

2.   **TRIAL—Names of Witnesses—Appeal—Grounds for Reversal—Right to Be Confronted With Witnesses.**

(a)   The constitutional requirement that in homicide cases the defendant shall be furnished at least two days before the case is called for trial with a list of the witnesses who will be called in chief to prove the allegations of the indictment or information, together with their post-office addresses, does not apply to witnesses who are called to testify as to the residence of absent witnesses whose names have been furnished to the defendant, and to the further fact that such witnesses testified in the preliminary examination of the defendant, and that the defendant was present, and that an opportunity was afforded him for cross-examining such witnesses.

(b)   It is the duty of counsel for appellant in their briefs to clearly set forth the ground upon which they rely for a reversal, and to give the reasons for and the authorities relied upon to support the objections which they make to any matter which occurred in the trial of the cause in the lower court.

(c)   The constitutional provision which guarantees to a defendant the right to be confronted by the witnesses against him is fully complied with when the defendant has had the opportunity to cross-examine the said witnesses in a preliminary trial before a justice of the peace.   When this has been done, and upon a subsequent trial of the said cause, if it is satisfactorily proven that such witnesses have, since the former trial, died, become

insane, left the state, or that their whereabouts cannot with due diligence be ascertained, or are sick and unable to testify, the testimony of such witnesses given upon said former trial may be proven upon the subsequent trial.

3.    **APPEAL AND ERROR**—Exclusion of Evidence—Sufficiency of Record. When a defendant seeks a reversal in this court on account of an alleged error on the part of the trial court in refusing to admit evidence offered, the record must show what this offered evidence was, so that this court can determine as to whether or not it was material and proper testimony, and as to whether or not the defendant was injured by its exclusion.

4.    **NEW TRIAL**—Verdict—Degree of Crime—Ground for Reversal.
     (a)   When a defendant is on trial for murder, and the jury under proper instructions find him guilty of manslaughter, this court will not grant a new trial upon the ground that the defendant should have been either convicted of murder or acquitted.
     (b)   The jury have the absolute right to fix the degree of a crime of which a defendant is convicted when the court submits to them the different degrees, and this court will not disturb their verdict upon the ground that they have found the defendant guilty of a less degree of offense than that which the evidence establishes.

(Syllabus by the Court.)

*Appeal from District Court, McCurtain County; D. A. Richardson, Judge.*

W. W. Warren was convicted of the offense of manslaughter in the first degree, and his punishment was assessed by the jury at imprisonment in the state penitentiary at McAlester for a period of 10 years, and he appeals. Affirmed.

*Spaulding & Carr* and *Armstrong & Etheridge,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

FURMAN, P. J.    First.    Appellant complains that the court erred in overruling his challenge to the juror Monteith. It is not necessary to discuss the merits of this challenge because the record shows that Monteith did not sit on the jury, and the record fails to show that appellant had exhausted his peremptory challenges, or was forced to accept any objectionable jurymen on account of his having been forced to use a peremptory

challenge on Monteith. Therefore, even if the court had erred in overruling appellant's objections to the juror Monteith, appellant did not suffer any injury thereby, and therefore cannot now be heard to complain.

Second. Appellant's second assignment of error is as follows:

"The court erred in admitting the testimony of Tom Graham, Joseph Barnes, J. J. McLain, and the purported testimony of George Sullivan and Ida Sullivan, purported to have been taken at the preliminary trial of plaintiff in error."

Appellant in his brief does not state the grounds upon which his objections were based to the testimony of Tom Graham, Joseph Barnes, and J. J. McLain. Therefore his objections to the testimony of these witnesses have been waived. This court has often stated that it will not search the record trying to discover errors which are not clearly set out in the brief of counsel for an appellant. The brief for an appellant should not only show that objections were made to the testimony of a witness, but must go further and state specifically what these objections were, and give the reasons for and the authority supporting the objections made. See rule 4 of the Criminal Court of Appeals (1 Okla. Cr. x, 101 Pac. vii). When this is not done, the objections will be held to be waived, and the court will not hunt for reasons why the objections should have been sustained. We cannot act in the double capacity of counsel for either side and as a court.

In examining the record, we find that the objection was made in the lower court to the testimony of these witnesses upon the ground that appellant had not been served with their names and post-office addresses two days before the case was called to trial. As this is a question that is liable to arise in the trial of any homicide case, we will waive the failure of appellant to present this matter in the brief, and will pass upon it as though it were properly presented in the brief. The latter part of section 20, art. 2, of the Constitution, is as follows:

"At least two days before the case is called for trial he [defendant] shall be furnished with a list of witnesses who will be

called in chief to prove the allegations of the indictment or information, together with thier post-office addresses."

It is seen upon its very face that this provision of the Constitution only applies to witnesses who are called in chief to prove the allegations of the indictment or information. This does not apply to either of the witnesses above named. Neither of them testified to a single substantive fact in the most remote degree tending to prove the allegations contained in the indictment. In fact, so far as this record goes, neither of said witnesses knew anything about the merits of this cause. Their testimony was simply introductory for the purpose of showing thaɩ George Sullivan and Ida Sullivan could not with due diligence be found in McCurtain county, and, when last heard from, they were in the state of Arkansas, and therefore beyond the jurisdiction of the court, and could not be reached by its process, and the further fact that there was a preliminary trial of this defendant before a justice of the peace of McCurtain county wherein he was charged with the murder of the deceased, and that appellant was present at said preliminary trial and was represented by counsel, and was offered full opportunity to cross-examine, and did cross-examine, said witnesses. Their testimony was simply preliminary to the introduction of the evidence of the witnesses so examined at said preliminary examination, and therefore said witnesses did not come within the case described in the Constitution.

In their brief, counsel for appellant contends that the testimony of George Sullivan and Ida Sullivan, taken before J. J. McLain, justice of the peace, at the preliminary examination of plaintiff in error, and which was read to the jury, was inadmissible because it was in violation of section 20 of article 2 of the Constitution, which provides that in all criminal prosecutions the accused shall be confronted by the witnesses against him, and was also in contravention to section 6489 of Snyder's Compiled Laws of Oklahoma of 1909, which provides that in a criminal case the defendant is entitled to be confronted by the witnesses against him, in the presence of the court. This is the only objec-

tion which counsel for appellant presented in their brief to the testimony of George Sullivan and Ida Sullivan given upon the preliminary trial of appellant, and therefore it is the only objection which will be considered by this court.

We have no direct statute in this state with reference to the introduction of the testimony of a witness given upon a former trial of the case, when such witness has since died or left the state, or for any reason is beyond the jurisdiction of the court, and therefore cannot be placed upon the witness stand. Section 6494 of Snyder's Compiled Laws of Oklahoma of 1909 is as follows:

"The procedure, practice and pleadings in the district courts of this state, in criminal actions or in matters of criminal nature, not specifically provided for in this Code, shall be in accordance with the procedure, practice and pleadings of the common law, and assimilated as near as may be with the procedure, practice and pleadings of the United States or federal side of said court."

The common law in force in the United States can only be found in text-books and in the decisions of various courts of this country. We must therefore look to these sources to see whether or not the objections offered by counsel for appellant in this case are well founded.

There is no higher or safer authority on the subject of evidence than Mr. Wigmore. In our judgment he has made the clearest and most satisfactory explanation of the reasons which support the constitutional and statutory provisions upon the subject of confrontation that we have found in the books. In section 1395, 2 Wigmore on Evidence, he explains this matter as follows:

"It is generally agreed that the process of confrontation has two purposes, a main and essential one, and a secondary and subordinate one. (1) The main and essential purpose of confrontation is to secure the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining of immediate answers. That this is the true and essential significance

of confrontation is demonstrated by the language of counsel and judges from the beginning of the hearsay rule to the present day. * * * Thus the main idea in the process of confrontation is the opportunity of cross-examination. The former is merely the dramatic feature, the preliminary measure, appurtenant to the latter. (2) There is, however, a secondary advantage to be obtained by the personal appearance of the witness. The judge and the jury are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying, and a certain subjective moral effect is produced upon the witness. * * * This secondary advantage, however, does not arise from the confrontation of the opponent and the witness. It is not the consequence of those two being brought face to face. It is the witness' presence before the tribunal that secures this secondary advantage, which might equally be obtained whether the opponent was or was not allowed to cross-examine. In other words, this secondary advantage is a result accidentally associated with the process of confrontation, whose original and fundamental object is the oppenent's cross-examination. The question, then, whether there is a right to be confronted with opposing witnesses, is essentially a question whether there is a right of cross-examination. If there has been a cross-examination, there has been a confrontation. The satisfaction of the right of cross-examination (under the rules examined *ante, §§ 1371-1393*) disposes of any objection based on the so-called right of confrontation. Nevertheless, the secondary advantage, incidentally obtained for the tribunal by the witness' presence before it—the demeanor evidence—is an advantage to be insisted upon wherever it can be had. No one has doubted that it is highly desirable, if only it is available. But it is merely desirable. Where it cannot be obtained, it need not be required. It is no essential part of the notion of confrontation. It stands on no better footing than other evidence to which special value is attached; and, just as the original of a document (*ante, § 1192*) or a preferred witness (*ante, § 1308*) may be dispensed with in case of unavailability, so demeanor evidence may be dispensed with in a similar necessity. Accordingly, supposing that the indispensable requirement of cross-examination has been satisfied, the only remaining inquiry is whether the demeanor evidence, to be obtained by the witness' production before the tribunal, is available. This inquiry—the conditions of unavailability of demeanor evidence by reason of death, illness, and the like—remains now to be made. But first the effect must be considered of the constitutional sanc-

tion in the United States of the principle of confrontation; for this has often erroneously affected the judicial attitude towards demeanor evidence. In the United States most of the Constitutions have given a permanent sanction to the principle of confrontation by provisions requiring that in criminal cases the accused shall be 'confronted with the witnesses against him' or 'brought face to face' with them. The question thus arises whether these constitutional provisions affect the common-law requirement of confrontation, otherwise than by putting it beyond the possibility of abolition by an ordinary legislative body. The only opening for argument lies in the circumstance that these brief provisions are unconditional and absolute in form; i. e., they do not say that the accused shall be confronted 'except when the witness is deceased, ill, out of the jurisdiction, or otherwise unavailable,' but imperatively prescribe that he 'shall be confronted.' Upon this feature the argument has many times been found that, although the accused has had the fullest benefit of cross-examining a witness now deceased or otherwise unavailable, nevertheless, the witness' presence before the tribunal being constitutionally indispensable, his decease or the like is no excuse for dispensing with his presence. That this argument is unfounded cannot be doubted; and the answer to it may be put in several forms: (1) There never was at common law any recognized right to an indispensable thing called confrontation as distinguished from cross-examination. There was a right to cross-examination as indispensable, and that right was involved in and secured by confrontation. It was the same right under different names. This much is clear enough from the history of the hearsay rule (ante, §1364), and from the continuous understanding and exposition of the idea of confrontation (ante, § 1395). It follows that, if the accused has had the benefit of cross-examination, he has had the very privilege secured to him by the Constitution."

He cites a great number of American and English cases as sustaining the doctrine announced. We have often examined the citations made by Mr. Wigmore, and, having invariably found them to be accurate, we are disposed to accept his statements and citations with reference to these authorities as being correct. In section 1398 he says:

"In dealing with depositions and former testimony, our courts have almost unanimously received them in criminal prosecutions, as not being obnoxious to the constitutional provision."

In section 1404 he says:

"Where the witness is out of the jurisdiction, it is impossible to compel his attendance, because the process of the trial court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless."

In Underhill on Criminal Evidence (2d Ed.) § 265, we find the following:

"If the accused has once enjoyed his right to confront witnesses, his constitutional right to meet the witnesses against him face to face is not violated by the admission of the testimony of such a witness who is absent at a subsequent trial."

In the case of *Sullivan v. State,* 6 Tex. App. 337-338, 32 Am. Rep. 580, that court said:

"The next important inquiry is, Was it competent for the state to prove, under the circumstances disclosed by the record, what the witness Dean had testified to before the examining court? The Constitution (article 1, § 10, of the Bill of Rights) declares that 'in all criminal prosecutions' the accused 'shall be confronted with the witness against him.' The Code of Criminal Procedure, art. 24, provides that 'the defendant upon a trial shall be confronted with the witnesses, except in certain cases, provided for in this Code, when depositions have been taken.' In treating of constiutional provisions similar to the one above set out, and found in all the constitutions of the several states and in that of the United States, Mr. Cooley lays down as the correct rule, deducible from the authorities, and which we adopt as correct, the following: 'The testimony for the people in criminal cases can only, as a general rule, be given by witnesses who are present in court. The defendant is entitled to be confronted with the witnesses against him; and if any of them be absent from the commonwealth, so that their attendance cannot be compelled, or if they be dead, or have become incapacitated to give evidence, there is no mode by which their statements against the prisoner can be used for his conviction. The exceptions to this rule are of cases which are excluded from its reasons by their peculiar circumstances; but they are far from numerous. If the witness was sworn before an examining magistrate, or before a coroner, and the accused had an opportunity then to examine him, or if there were a former trial, on which he was sworn, it seems allowable to make use of his deposition, or of the minutes of his examination, if the witness has since deceased, or is insane, or

sick, and unable to testify, or has been summoned, but appears to have been kept away by the opposite party.' Cooley's Const. Lim. Orig. pp. 363, 364. · Agreeably to Mr. Greenleaf, 'upon the question whether this kind of evidence is admissible in any other contingency except the death of the witness, there is some discrepancy among American authorities.' I Greenl. on Ev. § 163, note. The rule in the text appears to be that, 'when the testimony was given under oath, in a judicial proceeding in which the adverse litigant was a party, and where he had the power to cross-examine, and was legally called upon so to do, the great and ordinary test of truth being no longer wanting, the testimony so given is admitted, after the decease of the witness, in any suit between the same parties. It is also received if the witness, though not dead, is out of the jurisdiction, or cannot be found after diligent search, or is insane, or sick and unable to testify, or has been summoned, but appears to have been kept away by the adverse party. But testimony thus offered is open to all the objections which might be taken if the witness were personally present.' "

In the case of *Commonwealth v. Cleary,* on page 39 of 148 Pa., on page 1112 of 23 Atl., the Supreme Court of that state said:

"Where, upon a subsequent trial, the witness is dead, or beyond the jurisdiction of the court, there seems no good reason why his testimony taken upon the former trial, and clearly proved, should not be admitted. To deny this right would in many instances seriously interfere with the administration of justice, if not wholly defeat it. The defendant is not injured in such case, because he has been brought face to face with the witness, and has cross-examined him when the testimony was taken. In *Brown v. Commonwealth,* 73 Pa. 321 [13 Am. Rep. 740], it appeared that on the preliminary hearing before the committing magistrate, the defendant and his counsel being present, witness was examined whose testimony was taken down by defendant's counsel, and, the witness having died before the trial, the notes of his evidence, proved by the counsel under oath, were offered in evidence, objected to and admitted. It was contended that by the Constitution of this state the defendant was entitled to meet the witness face to face. It was held by this court in an elaborate opinion by Chief Justice Read that the notes of the hearing before the magistrate were properly admitted. The question was so elaborately discussed in that case that no further reference to it is needed."

In the case of *Lucas v. State,* 96 Ala. 51, 11 South. 216, the Supreme Court of Alabama said: .

"At a preliminary examination of the defendant Dock Tilley was examined as a witness by the state, and his testimony was reduced to writing. On the trial, after the indictment, Dock Tilley was absent, and, against the objections of the defendant, his testimony as given on the preliminary examination was admitted against him. The rule in such cases is that if a witness dies, or becomes insane, or has gone beyond the jurisdiction of the state permanently, or for such an indefinite time that his return is merely contingent or conjectural, the testimony of such witness may be proven on a subsequent trial. *Pruitt v. State* [92 Ala. 41], 9 South. 406; 1 Greenl. Ev. (14th Ed.) par. 163, and notes; *Lowe v. State,* 86 Ala. 52, 5 South. 435; *South v. State,* 86 Ala. 617, 6 South. 52; *Perry v. State,* 87 Ala. 30, 6 South. 425."

In the case of *State v. Walton,* 53 Ore. 562, 99 Pac. 433, the Supreme Court of Oregon said:

"The Constitution (section 11, art. 1) provides that in all criminal prosecutions the accused shall have the right 'to meet the witnesses face to face,' and it is contended that the admission of the testimony of the witnesses Johnson and Hogeboom, given on the former trial of the accused, was an infringement of this right. The Constitution of the United States, and of most states of the Union, contains similar provisions, and the general, if not the universal, holding of the courts is that their essential purpose is to secure to an accused the right of cross-examination, and, if he has once enjoyed that right, no constitutional privilege is violated by the admission of the testimony of such a witness, who is dead or absent from the state, at a subsequent trial. Underhill, Crim. Ev. § 255; 2 Wigmore, Ev. § 1397; *State v. Nelson,* 68 Kan. 566, 75 Pac. 505; *People v. Dowdigan,* 67 Mich. 95, 38 N. W. 920; *State v. Byers,* 16 Mont. 565, 41 Pac. 708; *Territory v Evans,* 2 Idaho (Hasb.) 651, 23 Pac. 232, 7 L. R. A. 646; *Marler v. State,* 67 Ala. 55, 42 Am. Dec. 95; *State v. McO'Blenis,* 24 Mo. 402, 69 Am. Dec. 435; *State v. King,* 24 Utah, 482, 68 Pac. 418, 91 Am. St. Rep. 808 (note, 61 Am. St. Rep. 886)."

This question has been previously passed upon by this court in the case of *Hawkins v. United States,* 3 Okla. Cr. 660, 108 Pac. 565. This court there said:

"Under the decisions of the Supreme Court of Arkansas,

where the defendant has been confronted with a witness in a former trial of the same cause, whether before a coroner or justice of the peace sitting as an examining magistrate, or upon an application for bail, or upon a trial in the circuit court, and where the witness testified under oath, and opportunity for cross-examination was afforded the defendant, the testimony given by such witness on such former trial may be proved in the final trial as secondary evidence, if it is first satisfactorily proven that the witness has since died, become insane, left the state, or that his whereabouts cannot with due diligence be ascertained, or that he is sick and unable to testify."

Applying the principles above enunciated to the case at bar, we find that it was proven to the satisfaction of the trial court that the whereabouts of the witnesses George Sullivan and Ida Sullivan could not with due diligence be ascertained, and that, when they were last heard from, they were in the state of Arkansas. The trial court having found these facts, and there being evidence in the record supporting this finding, we cannot disturb his decision upon this question. It was also proven that George Sullivan and Ida Sullivan testified on the 10th day of July, 1908, before J. J. McLain, a justice of the peace for McCurtain county, Okla., in this case when this defendant was having his preliminary trial before said justice, charged with the murder of A. L. Lamb, and that this defendant was present at said trial, and was represented by counsel, and upon trial both of the said witnesses were fully cross-examined by counsel for appellant. Under these conditions, we think that the trial court did not err in permitting the testimony given by said witnesses upon said examining trial to be read to the jury. Counsel for appellant cite the case of *James Watkins v. United States, 5 Okla. 729, 50 Pac. 88.* An examination of that case shows that it is not in point. Watkins was on trial charged with the offense of perjury. The United States was plaintiff and James Watkins was defendant. He offered in evidence the depositions of one John A. Watkins and one Ardill R. Johnson, taken in a civil suit wherein John A. Watkins was plaintiff and Chas. E. Schofield was the defendant. These depositions were by the trial

court excluded, and, Watkins being convicted of perjury, upon appeal the Supreme Court of Oklahoma Territory sustained the ruling of the lower court and excluded the depositions.   In the Watkins case the depositions offered were not taken in the same case between the same parties and the United States was not represented, and could not have been represented when said depositions were taken.   They were therefore properly held to be inadmissible, and that case has no relation whatever to the case before us.

Third.   The third assignment of error is as follows:

"The court erred in refusing to admit the testimony offered by the plaintiff showing the cause of the ill feeling that existed between him and the deceased."

No effort was made in the brief of appellant or in the case-made to show what facts he desired to prove which were excluded by the judge.   In the case of *Price v. State,* 1 Okla. Cr. 375, 98 Pac. 455, this court said:

"Defendant complains of the action of the trial court in sustaining objections to questions propounded to his witnesses, but the record does not show, except inferentially, the facts which defendant expected to prove by the witnesses, if they had been permitted to answer the questions to which objections were sustained.   In the absence of such showing in the record, this court cannot review the rulings of the trial court or hold that material error was committed in the rejection of competent testimony.   In order to avoid, mistakes, the jury should have. been withdrawn, and the court should have heard the testimony. . Then the record should have shown what the rejected evidence was.   This court would then have been in a position to pass intelligently upon the question.   As this record stands, we cannot say that the court committed material error in the ruling complained of."

Passing upon this very question in the case of *White v. State,* 4 Okla. Cr. 160, 161, 111 Pac. 1017, 1018, this court said:

"When the defendant attempts to prove threats made against him, and objections to the questions asked the witness are sustained, it is the duty of counsel for the defendant to incorporate in the record a statement as to what he expects to prove by the witness if allowed to testify.   This court could then be in a condition to determine as to whether or not such offered evidence

was material and proper. To reverse a case simply because a witness was not permitted to answer a question when there is no showing in the record that such answer would have been favorable to the defendant is to trifle with the law. We have no means of knowing what the answers would have been, and therefore cannot see whether the defendant was deprived of material testimony. Suppose this cause was reversed because the trial court refused to permit the witness to answer the questions which were asked him, and upon a second trial the court finds that the answers to such questions were not material; it is clear that the action of the court in reversing the cause would be unjust to the state. It is a very easy matter when objections to questions are sustained for counsel for the defendant to write out what answers they expect to obtain from the witness and hand it to the trial court, and have it incorporated in the record as a part of the case. We could then intelligently pass up the question as to whether or not the defendant was injured by the refusal of the court to admit this testimony. The writer of this opinion remembers a case which was reversed on account of the failure of the trial court to allow a witness to answer certain questions as to what the deceased had said. Upon the second trial the same questions were propounded to the witness, and he replied: 'He didn't say nothing.' Had this answer been incorporated in the first record, the reversal and delay of a second trial would have been avoided. The better practice would be to have the jury retire and let the court hear what answers the witness would make. This should be incorporated in the record. Then the matter could be intelligently passed upon both in the trial court and in this court. Neither counsel for the state nor for a defendant should be permitted to make oral statements in the presence of the jury as to what evidence they desire to introduce in reply to questions which have been objected to. This is a very unfair and dangerous practice. Improper impressions may thereby be made upon the minds of the jurors which cannot be effaced."

So far as the brief of counsel for appellant and the record in this case go, there is nothing to show that appellant was deprived of any material or competent testimony by the ruling of the court. The presumption is that all proceedings of the trial court were regular; and, if the defendant desires this court to review any rulings of the trial court, the burden is on him to show that such ruling was erroneous.

Fourth. The fourth assignment of error is that "the court erred in giving the jury an instruction on manslaughter." Counsel. for appellant does not complain that the jury were improperly instructed on the subject of manslaughter, but their .contention is that he should have been convicted of murder, or that he should have been acquitted. We agree with counsel for the appellant in the statement that there is evidence in this record which would sustain a verdict for murder, but there is also testimony which shows that appellant was laboring under the most intense excitement and passion at the time of the fatal difficulty. The testimony shows that, after appellant had shot and killed the deceased, appellant fired a shot at George Sullivan, who had taken no part in the difficulty, and who was running away from the scene of the homicide, and that appellant then picked up a Winchester and attempted to·shoot Hardis Lamb, a son of the deceased, who had taken no part whatever in the difficulty, and that he would have shot said Hardis Lamb if he had not been stopped by a bystander.

Defendant himself testified that before the fatal shot was fired the deceased grabbed at the gun or beard of the defendant, and that the deceased caught the defendant by the beard, and that deceased had cursed and abused the defendant before doing this. In the light of this testimony, the jury may have decided that the defendant was laboring under such intense excitement and passion at the time that he fired the fatal shot as to reduce the offense from murder to manslaughter. It is true that this may be considered as rather a strained construction to place upon the evidence; yet it is a possible and legitimate deduction to be drawn from the evidence, and the court therefore did not err in submitting this issue to the jury. But let that be as it may, the defendant cannot be heard to complain that he has been convicted of a less offense than the one which he actually committed.

In the case of *State v. Lindsey,* 19 Nev. 50, 5 Pac. 823, 3 Am. St. Rep. 778, 779, 780, the Supreme Court of Nevada has expressed our views upon this question:

. "But suppose the jury, in charity for the faults and weakness

of the human race, sympathy for the prisoner, or any other mistaken view of the law or the facts, lessens the offense to murder in the second degree, is the prisoner to go free? Does not the case stand precisely upon the same plane as a verdict of murder in the second degree, in any case not enumerated in the statute, where there is a willful, deliberate, and premeditated killing? Is it not as much the duty of the jury in such a case to find the prisoner guilty of murder in the first degree as in the cases specially enumerated in the statute? Suppose the jury in such a case, where the evidence is positive, clear, plain, and satisfactory beyond a reasonable doubt, regardless of all the testimony, and in violation of the well-settled principles of law, should find the prisoner guilty of murder in the second degree, would the prisoner be entitled to a new trial upon the ground that the verdict is against the evidence? Is it not a fact that juries frequently render just such verdicts, and the result cannot be accounted for upon any theory other than that of a compromise of opinion? Why should such verdicts be allowed to stand? The answer is plain. The reason is that the statute leaves the question of degree to be settled by the verdict of the jury. A verdict finding the prisoner guilty of murder without mentioning the degree would be a nullity. In *State v. Rover,* 10 Nev. 388, 21 Am. Rep. 745, this court referring the the statute which we have quoted, said: 'By this statute murder is divided into first and second degrees, depending upon the particular circumstances in which the crime is committed; and whether it be of the first or second degree is a fact to be specially found from the evidence adduced, without reference to any special facts which may be stated in the indictment. In case of a trial, the jury before whom the trial is had, if they find the defendant guilty, are required to find this fact, and to designate by their verdict whether their guilt be of the first or second degree; and, in case of a plea of confession, the court is required to determine this question of fact by the examiantion of witnesses in open court. It is therefore apparent from the plain and positive provisions of the statute that a verdict which fails to designate the degree of murder of which the jury find the defendant guilty is so fatally defective that no judgment or sentence can be legally pronounced thereon.' 10 Nev. 391, 21 Am. Rep. 746. A judge should always inform the jury of the degree which the law attaches to murder, by whatever means the crime may have been committed; but in every case it is the province of the jury, if the prisoner is found guilty, to determine and fix the degree by their verdict, and the courts cannot deprive the jury of their

right to fix the degree by imperatively instructing them, in a case where the crime was committed by administering poison (or in any other case), that if they find the prisoner guilty they must find him guilty of murder in the first degree. *Robbins v. State,* 8 Ohio St. 193; *Beaudien v. State,* 8 Ohio St. 638; *Rhodes v. Commonwealth,* 48 Pa. 398; *Lane v. Commonwealth,* 59 Pa. 375; *Shaffner v. Commonwealth,* 72 Pa. 61, 13 Am. Rep. 649. Wharton, in discussing the degrees of murder, says: 'But however clear may be the distinction between the two degrees, juries not infrequently make use of murder in the second degree as a compromise, when they think murder has been committed, but are unwilling, in consequence of circumstances of mitigation, to expose the defendant to its full penalties.' 2 Wharton's Crim. Law, §. 1112. In *Rhodes v. Commonwealth,* 48 Pa. 398, the court said: 'Under proper instructions from the bench, it is not only the right of the jury to ascertain the degree, but it is the right of the accused to have it ascertained by them. * * * No doubt cases of murder in the first degree have been found in the second, but this must have been anticipated when the statute was framed, and has certainly been observed under its operation, and yet it has remained upon our statute book since 1794 unaltered in this regard. Possibly the very distinction of degrees was invented to relieve such jurymen's consciences as should be found more tender on the subject of capital punishment than on their proper duties under evidence. Many men have probably been convicted of murder in the second degree who, really guilty of the higher crime, would have escaped punishment altogether but for this distinction in degrees so carefully committed by the statute to juries.' The jury have the undoubted power to fix the crime in the second degree when it ought, under the law and the facts, to be fixed in the first. 'We need not speculate why it was so provided. It is sufficient that it is so written, and we cannot change, alter, or depart from it.' *Lane v. Commonwealth, supra.* Our attention has not been called to any case where a verdict of murder in the second degree has been set aside upon the ground that the testimony was such as to make the crime murder in the first degree. But, on the other hand, the direct question involved in this case has been decided adversely to appellant. *State v. Dowd,* 19 Conn. 388; *Lane v. Commonwealth, supra.* In the latter case the court said: 'It has never yet been decided in Pennsylvania that a verdict of murder in the second degree might not be given in a case of murder by poison. That it may be given is as unquestionable as the power of the jury

is under the act to give it, and impossible for the court to refuse it.' If the jury fix the crime at murder in the second degree, in a case where the law and the facts make it murder in the first degree, it is an error in favor of the prisoner, of which the law will not take any cognizance, and of which the prisoner ought not to complain."

Mr. Bishop's New Criminal Procedure, § 596, is as follows:

"The jury have the absolute power to fix the degree, as, if in the opinion of the court which it should state for their guidance the evidence proves, however conclusively, the first degree, they can still return a verdict for the second. The defendant has no ground of complaint. Of course, the proofs must establish murder of one sort or the other."

In the case of *Jordon v. State,* 22 Ga. 558, the Supreme Court declined to grant a new trial when a defendant had been found guilty of manslaughter, although in the opinion of the court he was clearly guilty of murder. In the case of *Fagg v. State,* 50 Ark. 508, 8 S. W. 830, the Supreme Court of that state said:

"It is contended by the appellant that the evidence adduced at the trial leads to but one of two conclusions—that is, that the killing was murder in the first degree or justifiable homicide— and therefore that the jury could not legally return a verdict of manslaughter. Conceding the premises to be correct, the conclusion does not follow. Where the evidence and the instructions of the court demand a verdict of murder, but the jury finds manslaughter, there is no alternative but to sentence the prisoner accordingly. Bishop, Cr. Pr. § 642. Such is the effect of the judgments in *Allen v. State,* 37 Ark. 435; *Green v. State,* 38 Ark. 310. The principle of those cases is that the court cannot withhold from the jury the power to return a verdict according to their will for any grade of the offense charged against a defendant. The courts can only instruct juries as to their duty, giving them in charge the law applicable to the facts and no other. If there is no evidence whatever tending to establish a lower grade of homicide than murder in one instance, or voluntary manslaughter in another, the court should decline to give to the jury instructions as to any lower grade of homicide (*Benton v. State,* 30 Ark. 328; *Allen v. State, supra*), and it is the jury's duty to take the court's exposition of the law as that applicable to the case. But the court cannot direct a verdict from the higher offense nor

restrain the jury from returning it for the lower grade. *Flynn v. State,* 43 Ark. 289; *Adams v. State,* 29 Ohio St. 312."

We do not think that this court has the right to set aside a verdict for manslaughter if we were of the opinion that the defendant should have been convicted of murder.

Fifth. The fifth assignment of error is as follows: "The court erred in refusing to arrest the judgment and overruling plaintiff in error's motion for a new trial." In their brief counsel for appellant under the fifth assignment of error simply reiterate what they have previously said under other assignments of error.

We find no error in the record, and the judgment of the lower court is therefore in all things affirmed.

ARMSTRONG and DOYLE, JJ., concur.