## W. C. MALOON v. STATE.

No. A-5890. Opinion Filed Aug. 23, 1927.
(259 Pac. 173.)

W. N. Redwine and Geo. Hill, for plaintiff in error.

Edwin Dabney, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DOYLE, P. J. Appellant, W. C. Maloon, was tried upon an information charging him with the crime of murder, alleged to have been committed in Pittsburg county, October 18, 1924, by shooting one Pete Lout with a pistol. The trial resulted in a conviction of manslaughter in the first degree, the jury were unable to agree upon the punishment. Motion for new trial was duly filed and overruled, and on the 12th day of June, 1925, the court pronounced judgment and sentenced him to imprisonment in the penitentiary for a term of 40 years.

The evidence shows that the deceased, Pete Lout, and the defendant were both coal miners and lived at a little place in the eastern part of Pittsburg county called Manning. They were both members of the miners' union and at the time of this killing the defendant was a member of a committee appointed by the local union at Adamson to distribute aid to union miners and their families in the district where such miners were at that time unemployed. It appears that there was no strike on at that time, but many of the mines had closed down, and for that reason many of the miners and their families were in destitute circumstances. The supplies distributed consisted mostly of groceries.

The deceased had been a member of this committee and had assisted the defendant in the distribution of these supplies, which were being kept at the home of the defendant as a matter of convenience, both for the committee and the miners themselves. On the day in question the deceased and his brother Alex visited at the home of the defendant for the purpose of procuring some supplies for Alex Lout and his family. That the deceased went for the purpose of returning a bucket of syrup to the committee which he had previously bought from Maloon. It seems that whatever

trouble occurred leading up to the killing was occasioned by the defendant checking off against the deceased with his employee a charge of 80 cents for this bucket of syrup.

The testimony of Alex Lout, brother of the deceased, and John Tenny, brother-in-law of the deceased, and numerous other witnesses for the state was, in substance, to the effect that when the deceased and his brother approached the defendant's home he was sitting at a table on the porch; that the deceased placed the bucket of syrup on the porch and said, "Bill, what did you turn that 80 cents in against me for?" The defendant said, "What else could I do? you didn't pay me like you promised;" and the deceased said, "You ought to give me a little more time on it; I think it was a damn dirty trick in you, and it will never do you a damn bit of good;" that the defendant ran into the house and right back out of the door and shot the deceased twice; one bullet entered below the left shoulder blade and the other near the left hip.

The evidence on the part of appellant was to the effect that deceased had threatened to do him bodily injury; that these threats had been communicated; and that the deceased was a man of violent and dangerous disposition.

As a witness in his own behalf defendant testified that his age was 42 years, a married man, coal miner by occupation. As chairman of the committee was distributing supplies to the destitute families of miners; that the deceased had aided in the work by acting on the committee until about two or three weeks before the homicide; that the deceased was working and purchased a bucket of syrup and promised to pay for it on following Saturday night, the price was 80 cents, and other members of the committee were there and consented to the sale to accommodate the deceased; that he had dis-

tributed aid to Alex Lout's children that day; and that shortly after Alex Lout and his brother, the deceased, came to his place. The deceased threw the bucket of syrup down at his feet and said, "Why did you turn that 80 cents in against me?" and he said, "Pete, what else could I do? you didn't pay like you agreed to; you passed the first, the second and third Saturday, and how could I keep my books anything like straight?" and he said, "You damn dirty son of a bitch, it will never do you any good; I will cut your head off;" and he had a knife in his hand; that his gun was hanging on the inside of the door, and he got his gun and said, "Pete, you get away from my place; if I have done you any wrong we will take our trouble to the local union;" and he said, "You damn dirty son of a bitch, I will settle with you now;" and at that I fired my gun twice. That he believed his life was in imminent danger when he fired the shots; that he knew deceased to be a quarrelsome and dangerous man; that he knew two instances where he had assaulted another person with a knife.

The errors assigned are that the court erred in its rulings in rejecting competent evidence to which exceptions were duly saved, and that the punishment assessed is excessive, and asking that the judgment be either reversed or modified.

An examination of the record discloses that only in one instance did counsel for the defendant make any offer of what was expected to be proved, had the witnesses been permitted to answer. The practice is well settled that such an offer is absolutely necessary to present the question for review. White v. State, 4 Okla. Cr. 160, 111 P. 1017; Warren v. State, 6 Okla. Cr. 1, 115 P. 812, 34 L. R. A. (N. S.) 1121.

A witness for the defendant was asked if he heard the defendant make any statement in a meeting of the

local as to the settlement of disputes about the aid. The state's objection was sustained, and counsel for the defendant stated:

"Defendant expects to prove by this witness that at a meeting of the local, at Manning, the defendant in the presence of the deceased and other members of the local made the statement that, if there was any complaint or grievances about the disposition of the aid, such complaint or grievance should be made at the meeting of the local and not at the home of this defendant.

"The Court: Objections sustained."

We are inclined to think that the court erred in sustaining the objection made. However, it appears that it is shown by the testimony of other witnesses that this statement was made.

It is well settled that an error in the rejection of evidence is not ground for reversal, unless after an examination of the entire record it appears to this court that the same probably resulted in a miscarriage of justice or deprived the defendant of a substantial right. Littleton v. State, 19 Okla. Cr. 461, 200 P. 716.

It was the exclusive province of the jury to pass upon the credibility of the witnesses, and under the settled rules of the court we cannot disturb the verdict of the jury where there is substantial evidence to support it.

There was no objection made to the instructions given. They fully covered the laws applicable to the facts in evidence in the case.

Finally, it is insisted that the punishment imposed by the court is excessive and should be modified. Counsel in their brief say that:

"In the event the court comes to the conclusion that the case should not be reversed, then the defendant most respectfully submits that the sentence given to defendant by the court, to wit, 40 years in the penitentiary,

was not warranted under the evidence and the verdict of the jury. The case was submitted to the jury about 7 o'clock in the afternoon, and about 1 hour thereafter the jury returned their verdict of manslaughter in the first degree; that the jury in their deliberation stood from 5 to 20 years as a sentence, and that the jury would have agreed on a verdict and sentence not exceeding 20 years if they had continued their deliberations, but on account of the trial judge's father having died during the trial of the case at his home in Illinois, the jury were anxious to get through so the trial judge could leave on the north-bound train at 9 o'clock that night; that this explains for the short consideration of the jury. That a 40-year sentence would mean a life sentence, and the jury did not intend that said defendant should have a life sentence."

Upon a careful examination of the record we are inclined to think that the punishment imposed is excessive. It is both the spirit and the intention of our laws that punishment for crime shall be imposed for the protection of society and reformation of the criminal.

Under authority conferred upon this court by section 2820, C. S. 1921, we deem it our duty to modify the judgment to imprisonment in the penitentiary for a term of 20 years instead of 40 years.

The judgment and sentence of the trial court is hereby modified to the extent of reducing it to a term of 20 years' imprisonment in the state penitentiary. As so modified, the judgment is affirmed.

EDWARDS and DAVENPORT, JJ., concur.